Duane L. Loft (dloft@bsfllp.com)
Anastasia Cembrovska (acembrovska@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for the Cyrus Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| | Case No. 18-13571 (smb) |
| THE BANKRUPTCY ESTATE OF NORSKE SKOGINDUSTRIER ASA | |
| Debtor in a Foreign Proceeding. | |
| THE BANKRUPTCY ESTATE OF NORSKE SKOGINDUSTRIER ASA, | Adv. Pro. No. 18-01846 (smb) |
| Plaintiff, | |
| vs. | |
| CYRUS CAPITAL PARTNERS, L.P., *et al.*, | |
| Defendants. | |

**THE CYRUS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.    EACH OF PLAINTIFF'S CLAIMS AGAINST CYRUS IS DEFECTIVE FOR
      FAILURE TO ALLEGE COGNIZABLE HARM TO THE DEBTOR. ........................... 2

II.   PLAINTIFF'S AVOIDANCE CLAIM IS OTHERWISE DEFECTIVE. .......................... 5

      A.    Choice of Law Requires Dismissal of Plaintiff's Avoidance Claim. .................... 5

      B.    Plaintiff's Avoidance Claim Against Cyrus Should Be Dismissed for Failure to
            Plead Intent. ........................................................................................................ 9

      C.    Cyrus Cannot be Liable for Transactions to Which it Was Not a Party. ............. 12

III.  THE FAC FAILS TO STATE A CLAIM UNDER § 17-1 OF NORWAY'S PUBLIC
      LIMITED LIABILITY COMPANIES ACT. ................................................................ 14

      A.    The FAC Fails to State a Claim Under § 17-1(1). ............................................... 14

      B.    The FAC Fails to State a Claim Under § 17-1(2). ............................................... 16

IV.   THE FAC FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. ................... 17

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Am. Pegasus SPC v. Clear Skies Holding Co., LLC*,
  No. 1:13-CV-03035-ELR, 2015 U.S. Dist. LEXIS 189547 (N.D. Ga. Sept. 22, 2015) ............ 6

*Aviles v. S&P Global, Inc.*,
  No. 17-CV-2987 (JPO), 2020 WL 168940 (S.D.N.Y. Apr. 6, 2020) ........................................ 8

*Benefield v. Pfizer Inc.*,
  103 F. Supp. 3d 449 (S.D.N.Y 2015) ...................................................................................... 8

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
  491 B.R. 335 (S.D.N.Y. 2013) .......................................................................................... 11, 12

*Citibank, N.A. v. Norske Skogindustrier ASA*, No. 16-CV-850 (RJS), 2016 WL 1052888
  (S.D.N.Y. Mar. 8, 2016)......................................................................................................... 12

*Cooney v. Osgood Mach., Inc.*,
  81 N.Y.2d 66 (N.Y. 1993)......................................................................................................... 8

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
  773 F.2d 452 (2d Cir. 1985) ..................................................................................................... 6

*Fargas v. Cincinnati Mach., LLC*,
  986 F. Supp. 2d 420 (S.D.N.Y. 2013) .................................................................................... 18

*Fernandez v. UBS AG*,
  222 F. Supp. 3d 358 (S.D.N.Y. 2016) ...................................................................................... 9

*Fogerty v. Petroquest Resources, Inc. (In re Condor Insurance Ltd.)*,
  601 F.3d 319 (5th Cir. 2010)..................................................................................................... 6

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*,
  736 F.3d 213 (2d Cir. 2013) ................................................................................................. 7, 8

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
  592 F. Supp. 2d 283 (N.D.N.Y. 2008), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) ....................... 12

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002), *leave to appeal denied by* 288 B.R. 52 (S.D.N.Y. 2002)
  ................................................................................................................................................... 9

*In re Awal Bank, BSC*,
  455 B.R. 73 (Bankr. S.D.N.Y. 2011) ........................................................................................ 6

*In re Coin Phones, Inc.*,
    153 B.R. 135 (Bankr. S.D.N.Y. 1993) ................................................................. 11

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................... 18

*In re Hellas Telecomms. (Lux.) II SCA*,
    524 B.R. 488 (Bankr. S.D.N.Y.), *adhered to*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) ............... 7

*In re Koreag, Controle et Revision S.A.*,
    961 F.2d 341 (2d Cir. 1992) ............................................................................... 6

*In re Maxwell Commc'n Corp.*,
    93 F.3d 1036 (2d Cir. 1996) ............................................................................... 6

*In re Metzeler*,
    78 B.R. 674 (Bankr. S.D.N.Y. 1987) .................................................................... 6

*In re Old CarCo LLC*,
    435 B.R. 169 (Bankr. S.D.N.Y. 2010) ............................................................. 5, 12

*In re Refco Sec. Litig.*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010) ................................................................... 9

*In re Sabine Oil & Gas Corp.*,
    562 B.R. 211 (S.D.N.Y. 2016) .......................................................................... 12

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
    559 B.R. 563 (Bankr. S.D.N.Y. 2016) ................................................................. 19

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) .................................................................. 7

*In re Trace Int'l Holdings, Inc.*,
    301 B.R. 801 (Bankr. S.D.N.Y. 2003) .................................................................. 9

*In re Velo Holdings Inc.*,
    472 B.R. 201 (Bankr. S.D.N.Y. 2012) ................................................................. 11

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
    No. 01 CIV. 2946 (DLC), 2004 WL 1944457 (S.D.N.Y. Aug. 31, 2004) ...................... 17, 18

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    739 F.3d 45 (2d Cir. 2013) ............................................................................... 18

iv

*Manney v. Reichert*,
  No. 13 CV 4413 (SFJ) (GRB), 2014 WL 1315382 (E.D.N.Y. Mar. 28, 2014) ......................... 8

*Margel v. E.G.L. Gem Lab Ltd.*,
  No. 04 CIV.1514 (PAC)(HBP), 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) ......................... 18

*Oliver Wyman, Inc. v. Adam*,
  No. 15 Civ. 5305 (RJS), 2016 U.S. Dist. LEXIS 130534 (S.D.N.Y. Sept. 22, 2016) ............... 8

*Pereira v. Grecolas Ltd., et al. (In re Saba Enters., Inc.)*,
  421 B.R. 626 (Bankr. S.D.N.Y. 2009) ................................................................. 9

*Picard v. Estate of Chais (In re Barnard L. Madoff Inv. Sec. LLC)*,
  445 B.R. 206 (S.D.N.Y. 2011) ......................................................................... 9

*Red Fort Capital, Inc. v. Guardhouse Prods, LLC*,
  397 F. Supp. 3d 456 (S.D.N.Y. 2019) ............................................................... 4

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) .............................................................. 9

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*,
  No. 18-cv-6658 (JSR), 2019 U.S. Dist. LEXIS 62745 (S.D.N.Y. Apr. 11, 2019) ................... 19

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*,
  No. 18-cv-6658 (JSR), 2020 WL 159765 (S.D.N.Y. Jan. 13, 2020) ........................... 10

*United Feature Syndicate, Inc. v. Miller Features, Inc.*,
  216 F. Supp. 2d 198 (S.D.N.Y. 2002) ............................................................... 8

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) .............................................................. 4

**Statutes & Rules**

11 U.S.C. §§ 1501–1532 ............................................................................... passim

Fed. R. Evid. 201 ....................................................................................... 4

The Cyrus Defendants respectfully submit this Reply in further support of their Motion to Dismiss the First Amended Complaint (the "FAC").

## PRELIMINARY STATEMENT

Despite its 54 pages, Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opposition" or "Opp.") comes no closer to explaining why the Cyrus Defendants should remain in this lawsuit. The Opposition abandons (as it must) any claim based on the "Cyrus Sale," a third-party transaction between Cyrus and GSO, two creditors, that had nothing to do with the Debtor. And the remaining "intentional fraudulent transfers" are, as the Opposition admits, not transactions in which Cyrus received anything, from anyone.

Faced with this stark reality, the Opposition resorts to inventing new allegations not found in the FAC. The Opposition accuses Defendants of "leveraging their insider status" to "force the Norske Board" into avoiding a default, all so that Defendants could profit from unidentified "CDS positions." Putting aside that many of these allegations are made for the first time in the Opposition, Plaintiff's new theories fail in the face of one simple fact (which is alleged): that the Norske Board, at all relevant times, acted in an independent and arms'-length manner to negotiate and approve each of the challenged transactions. Cyrus did not (because it could not) force the Company to do anything. This is fatal to any claim against Cyrus.

The Opposition also has no answer to the other fundamental defects identified in Cyrus's opening Memorandum ("Cyrus Mem."). *First*, the FAC does not allege any economic harm to the Debtor. The Opposition theorizes about harm suffered by certain creditors of *other* entities within the "Norske Enterprise," but none of those other entities is the Debtor. The Debtor in this case is the estate of Norske Skogindustrier ASA ("Norske ASA"), and the FAC fails to plead any harm suffered by the estate of Norske ASA or its creditors. *Second*, the "intentional fraudulent transfer" claim against Cyrus fails for a variety of other reasons, including because the FAC fails to allege

any "badge of fraud," because Cyrus is not an alleged party to any fraudulent transfer, and because

the claim is pleaded only under Norwegian law, even though Cyrus's alleged conduct all

purportedly took place in New York. *Third*, the FAC's claim under § 17-1 of the Norwegian

Public Limited Liability Companies Act fails because Cyrus is not alleged to have taken any

improper action in its capacity as a shareholder or otherwise aided and abetted any improper action

by the Norske Board. *Finally*, the unjust enrichment claim fails because it is not recognized under

Norwegian law, because it is based on transactions governed by written contracts, and because

Cyrus is not even alleged to have been "enriched," let alone unjustly enriched. Cyrus respectfully

requests dismissal with prejudice.[1]

## **ARGUMENT**

### I.   **EACH OF PLAINTIFF'S CLAIMS AGAINST CYRUS IS DEFECTIVE FOR FAILURE TO ALLEGE COGNIZABLE HARM TO THE DEBTOR.**

Plaintiff does not dispute that, to state a claim under each of the theories asserted against

Cyrus, the FAC must allege an economic harm suffered by the estate of Norske ASA, the debtor

in the foreign insolvency proceeding and the only Norske entity that sought recognition in this

Chapter 15 case. Cyrus Mem. at 17. Plaintiff also does not dispute that economic harm suffered

by some other corporate entity within the Norske Enterprise is irrelevant here: Under Norwegian

law, "the debtor" is the company under insolvency proceedings, not any of its parents, subsidiaries,

or affiliates. Ro Decl. ¶ 23. As Plaintiff's Norwegian law declaration admits, the only relevant

loss is "the *estate's* economic loss." Declaration of Egil Horstad ("Horstad Decl.") ¶ 32 (emphasis

added).

---

[1] Cyrus incorporates by reference the grounds for dismissal asserted by GSO, to the extent applicable to the claims against Cyrus.

As established in Cyrus's opening memorandum, the FAC fails to establish economic harm to the estate of Norske ASA. Cyrus Mem. at 21-23. The alleged Cyrus Sale was merely a change in ownership of Norske ASA's bonds and imposed no new liability on Norske ASA. Indeed, Plaintiff is now abandoning (as it must) any claim based on the Cyrus Sale. *See* Opp. at 38 ("Plaintiff is not [] seeking to 'avoid the component transactions by which that overarching transfer was executed,' *e.g.,* . . . the transfer of the Cyrus Defendants' 2016 SUNs to the GSO Defendants."). The remaining transactions (the alleged Second Restructuring, Upstreaming, and Transfer) are not alleged to have had any effect on the balance sheet of Norske ASA. They are alleged to have raised cash at a Norske subsidiary (the Second Restructuring), made that cash available to Norske ASA (the Upstreaming), and repaid the 2016 SUNs issued by Norske ASA (the Transfer). FAC ¶¶ 116, 121, 123. After those transactions, the balance sheet of Norske ASA is not alleged to have been any worse than it was before. Plaintiff does not contest this obvious reality, and it is fatal to each of the claims. Cyrus Mem. at 21-25 (fatal to § 5-9 claim); *id.* at 25-31 (fatal to § 17-1 claim); *id.* at 31-34 (fatal to unjust enrichment claim).

In its Opposition, Plaintiff claims that the Upstreaming and Transfer "left the estate unable to pay other creditors, including the senior bondholders such as the holders of the SSN and PEN notes," to which Norske ASA had "issued secured guarantees." Opp. at 21, 24. First of all, the idea that any guarantee obligations were "secured" is nowhere in the FAC and appears to be contradicted by the FAC's own exhibits. *See* FAC Ex. 1 at 112 (the PENs "are guaranteed on a senior subordinated *unsecured* basis by the Parent") (emphasis added). In any event, the guarantees to the holders of the PENs and SSNs were fully released upon the "forced sale" of NSAS. FAC ¶ 143; *see also* Supplemental Declaration of Duane L. Loft in Support of the Cyrus

3

Defendants' Motion to Dismiss ("Loft Decl."), Ex. 1.[2]   The Opposition theorizes that "the amount of intercompany debts had increased by an amount equal to the Upstreaming and Transfer," Opp. at 24, but this allegation is not in the FAC either.   "It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."   *Red Fort Capital, Inc. v. Guardhouse Prods, LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019).

Plaintiff next resorts to theorizing about loss suffered by the "Norske Enterprise," including the subsidiaries NSAS and NSH.   But those entities are not the debtor in this case.   "[T]he only relevant inquiry concerns the financial condition of Norske ASA and its creditors, rather than the Norske Enterprise."   Supp. Ro Decl. ¶ 25.   Accordingly, any loss suffered by other entities in the "Norske Enterprise" is irrelevant.   In any event, Plaintiff's theory does not make sense.   Plaintiff claims that prior to the challenged transactions, the "Norske Enterprise had available liquid assets [of] approximately €160 million" and speculates that "it would have been better to liquidate Norske Skogindustrier before the payment on the 2016 SUNs, stop any further operating losses, and distribute the company's value equitably among its creditors."   Opp. at 23-24.   But this level of "liquid assets" is alleged to have existed only *as a result* of the transactions at issue.   FAC ¶ 122.   ("*[A]fter* the issuance of the NSF and the secured debt instruments, the Norske Enterprise's cash position was approx. EUR 160 million . . . .") (emphasis added).   The Second Restructuring is alleged to have raised €145 million.   FAC ¶¶ 116, 119.   If it were liquidated prior to the alleged Transfer, then yes, Norske may not have repaid the 2016 SUNs.   But it also would have had €145 million less in "liquid assets" to pay other creditors.

---

[2] The Court should take judicial notice of this notice to Norske Skog AS's noteholders because it was obtained from the official Norske Skogindustrier website.   *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("[A] court may take judicial notice of information publicly announced on a party's website").   Additionally, the facts located therein are not "subject to reasonable dispute."   Fed. R. Evid. 201.

Stripped bare, Plaintiff's argument is that the Court should ignore the aspects of the disputed transactions that raised the cash, and focus myopically on the debtor's cash position at the moment prior to the repayment of the 2016 SUNs.  But this violates Plaintiff's own admonition that "the allegations of the FAC must be considered in their entirety to give them proper context."  Opp. at 21.  It is also not the law.  *See* Supp. Ro Decl. ¶ 11 (a Norwegian court would not consider the debtor's cash position prior to the alleged Transfer "in isolation"); *accord In re Old CarCo LLC*, 435 B.R. 169, 187 (Bankr. S.D.N.Y. 2010) (holding Trust fails to state claim for fraudulent conveyance where Complaint "does not include, or even reference, the significant value received by [debtor] pursuant to the overall transaction").  By failing to allege that the disputed transactions caused any economic loss to the Norske ASA estate, the FAC fails to state a claim.

## II.    PLAINTIFF'S AVOIDANCE CLAIM IS OTHERWISE DEFECTIVE.

### A.    Choice of Law Requires Dismissal of Plaintiff's Avoidance Claim.

Plaintiff does not dispute that if New York law applies to its avoidance claim, then that claim must be dismissed.  That is because Plaintiff seeks avoidance under only Norwegian law and does not (because it cannot[3]) assert an avoidance claim under New York law.  Plaintiff makes a series of arguments in an attempt to avoid application of New York law, but none has any merit.

*First*, Plaintiff urges this Court to resolve choice-of-law based on "federal principles" rather than New York choice-of-law rules.  Opp. at 5.  But Plaintiff does not even attempt to establish that federal choice-of-law rules differ from those of New York, let alone that federal rules would require application of Norwegian law.  Indeed, in the very authority upon which Plaintiff relies, the Second Circuit "discern[ed] no significant difference between the applicable federal and New York choice-of-law rules" because both involve an "interest analysis."  *In re Koreag,*

---

[3] Plaintiff concedes that, for a Chapter 15 foreign representative, "the Bankruptcy Code's claw-back provisions are expressly unavailable."  Opp. at 5; *see also* Cyrus Mem. at 1.

*Controle et Revision S.A.*, 961 F.2d 341, 350-351 (2d Cir. 1992). Plaintiff claims that it is "not a controversial proposition" that foreign law should govern "where the Bankruptcy Code's claw-back provisions are expressly unavailable." Opp. at 5. But Plaintiff cites no authority for this proposition. What Plaintiff describes is simply a *conflict* of laws, not any reason to apply one law over another.

*Second*, Plaintiff urges the Court to apply Norwegian law as a matter of "comity." Opp. at 5-7. But "comity" does not supplant a choice-of-law analysis. Comity might "shorten the reach of a statute" or lead a court to "decline to exercise jurisdiction in a case properly adjudicated in a foreign state," but comity alone does not dictate which country's laws should apply. *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996). Indeed, in the Second Circuit's comity decisions cited by the Opposition, the court considered the "interest" of each jurisdiction in determining which substantive body of law would supply the rule of decision, rather than automatically applying foreign law as a matter of comity. *Id.* at 1052-53 (determining that foreign law governed and dismissing case); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458-60 (2d Cir. 1985) (same).

At most, Plaintiff establishes that a Chapter 15 foreign representative "may" bring avoidance claims under applicable foreign law. Opp. at 5-6 (citing *In re Metzeler*, 78 B.R. 674 (Bankr. S.D.N.Y. 1987); *Fogerty v. Petroquest Resources, Inc. (In re Condor Insurance Ltd.)*, 601 F.3d 319, 320-21 (5th Cir. 2010); *Am. Pegasus SPC v. Clear Skies Holding Co., LLC*, No. 1:13-CV-03035-ELR, 2015 U.S. Dist. LEXIS 189547, at *51 (N.D. Ga. Sept. 22, 2015)). But this is true only *if* foreign law applies, and Chapter 15 does not dictate choice-of-law. *See In re Awal Bank, BSC*, 455 B.R. 73, 91 n.18 (Bankr. S.D.N.Y. 2011) ("The legislative history of § 1523(a) states, '. . . [it does not] create or imply any legal rules with respect to the choice of applicable law

as to the avoidance of any transfer or obligation. The court will determine . . . what national law

may be applicable to such action.'"). As such, courts considering avoidance claims brought by a

Chapter 15 representative first conduct a choice-of-law analysis to determine which jurisdiction's

substantive body of law supplies the rule of decision. *In re Toft*, 453 B.R. 186, 196 (Bankr.

S.D.N.Y. 2011) ("[R]elief should not be granted or denied in a cross-border [Chapter 15] case

where there is a conflict between U.S. and foreign law without a conflict of law analysis . . . based

on familiar choice of law principles"). If the foreign representative has asserted an avoidance

claim under a substantive law that, upon a choice-of-law analysis, does not apply, then the claim

will be dismissed. *See, e.g.*, *In re Hellas Telecomms. (Lux.) II SCA*, 524 B.R. 488, 516–21 (Bankr.

S.D.N.Y.), *adhered to*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) (dismissing avoidance claim pleaded

under New York law because the "Court conclude[d] that either Luxembourg or U.K. law applies

to Count II, not New York law").

*Third*, Plaintiff argues that even under New York's choice-of-law rules, the Court should

choose the law of Norway where the Plaintiff is alleged to have suffered injury, rather than that of

New York where Cyrus is alleged to have engaged in tortious conduct. Opp. at 7-9. But Plaintiff's

principal authority for this argument, "the Second Circuit's *Geron* decision," Opp. at 8, says the

opposite. In *Geron*, the Second Circuit applied New York law because the defendant's tortious

conduct was alleged to have taken place in New York. *See Geron v. Seyfarth Shaw LLP (In re*

*Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Plaintiff cites language from *Geron* discussing

where "the injury was inflicted," Opp. 8, but this was not a discussion of where the injury *was*

*sustained*. The court simply was distinguishing the location of the primary tortious conduct (New

York) from the place where the conduct "originated" (California). *Geron*, 736 F.3d at 220. The

Second Circuit was clear that "[i]f conflicting conduct-regulating laws are at issue, the law of the

jurisdiction where the tort occurred will generally apply." *Id.* at 220 n.7 (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993)).[4]  Because fraudulent conveyance laws are "conduct-regulating," the applicable law is the law of the jurisdiction where Cyrus's conduct allegedly occurred. *See* Cyrus Mem. at 15-16.

*Finally*, Plaintiff argues that even if the location of Defendants' conduct determines choice of law, that location still should not be New York because "GSO and Cyrus took fraudulent actions in New York, Oslo, London, Paris, and elsewhere." Opp. at 9.  But as to Cyrus, there are no such allegations. *See* FAC ¶¶ 30-31, 35, 126 (alleging Cyrus engaged in tortious conduct in New York). The paragraphs that Plaintiff cites in support of this argument either say nothing about the location of any alleged conduct, FAC ¶¶ 41, 85-101, 104-06, 116-24, 133-34, 139-45, 157-58, 165, 172, 187, Exs. 5 & 6, or refer only to the location of the Norske Board or GSO, not Cyrus, *id.* at ¶¶ 37, 130-32, Exs. 18 & 19.  Accordingly, New York law applies, and Plaintiff's Norwegian law avoidance claim must be dismissed for that reason alone.

---

[4] *See also Aviles v. S&P Global, Inc.*, No. 17-CV-2987 (JPO), 2020 WL 168940, at *5 (S.D.N.Y. Apr. 6, 2020) ("Plaintiffs' argument rests on the premise that 'the locus of the tort is generally deemed to be the place where harm was inflicted.' That gets it exactly backward.") (internal citations omitted); *United Feature Syndicate, Inc. v. Miller Features, Inc.*, 216 F. Supp. 2d 198, 215 (S.D.N.Y. 2002) ("[T]he law of the place of the tort will usually have a predominant, if not exclusive, concern"). Plaintiff's remaining cases do not concern avoidance claims and involve highly unique facts not present here. *See Oliver Wyman, Inc. v. Adam*, No. 15 Civ. 5305 (RJS), 2016 U.S. Dist. LEXIS 130534, at *12-13 (S.D.N.Y. Sept. 22, 2016) (applying New York law to fraud and fraudulent inducement claims where defendant's alleged "misrepresentations and omissions" occurred in both New York and Massachusetts, Plaintiff suffered "severe business injury" in New York, and "the location of the alleged injury here was not a mere fortuity, but the result of Defendants' deliberate efforts"); *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 459 (S.D.N.Y 2015) (applying Georgia law to negligence, design defect, manufacturing defect, and failure to warn claims because "Georgia has a legitimate and powerful interest in ensuring the safety of pharmaceuticals that out-of-state corporations market, sell, and distribute within its state to its own citizens"); *Manney v. Reichert*, No. 13 CV 4413 (SFJ) (GRB), 2014 WL 1315382, at *1-2 (E.D.N.Y. Mar. 28, 2014) (applying New York law to fraudulent inducement claim where plaintiffs and defendant were domiciled in New York, plaintiffs and defendants formed their business relationship in New York, and plaintiff suffered injury in New York).

### B.    Plaintiff's Avoidance Claim Against Cyrus Should Be Dismissed for Failure to Plead Intent.

Plaintiff does not dispute that its avoidance claim against Cyrus is an "intentional fraudulent transfer" claim subject to heightened pleading under Federal Rule of Civil Procedure 9(b). As Plaintiff's own authorities establish, the complaint is required to plead, at a minimum, "badges of fraud" sufficient to give rise to a strong inference of fraudulent intent. Opp. at 25 n.11 (citing *Pereira v. Grecolas Ltd., et al. (In re Saba Enters., Inc.)*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009); *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002), *leave to appeal denied by* 288 B.R. 52 (S.D.N.Y. 2002)); *see also id.* at 37 (identifying badges of fraud).[5] The FAC fails to plead any badge of fraud. There is no allegation that any of the alleged transactions involved inadequate consideration. To the contrary, the FAC is premised on the repayment of bonds at their maturity – a payment of existing debt that is presumptively for "good consideration" and "not fraudulent." *In re Trace Int'l Holdings, Inc.*, 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003). Further, Cyrus was not a party to that repayment, nor to the alleged "Upstreaming," and Plaintiff makes no attempt to explain how a non-party to a transaction could have acted with fraudulent intent. And as to the Cyrus Sale – the

---

[5] Plaintiff notes that "[f]raudulent intent may be alleged generally." Opp. at 4. Nevertheless, as Plaintiff's own authorities acknowledge, "the relaxation of the specificity requirement for scienter is not to be abused or mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999). Rather, plaintiffs are required "to allege facts that give rise to a 'strong inference' of the defendant's culpable state of mind." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 315 (S.D.N.Y. 2010); *see also Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 388 (S.D.N.Y. 2016) ("The Court must be especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants"). Plaintiff urges the Court to take a "liberal" approach in construing its allegations of fraudulent intent because it is a trustee asserting claims on behalf of creditors. Opp. at 25. Certain courts have done so in highly unique circumstances not present here. *See, e.g.*, *Picard v. Estate of Chais (In re Barnard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 215, 219 (S.D.N.Y. 2011) (allowing circumstantial evidence of fraudulent intent in claim of decades-long fraud "of unparalleled magnitude" in light of the "vastness and complexity" of the trustee's investigation). Other courts, however, have found that "the relaxed pleading standard applicable to trustees does not mean that the particularity requirement is eliminated." *Pereira*, 421 B.R. at 640-641 (collecting cases). Regardless, Plaintiff's allegations fail whether this Court applies a lenient or stringent interpretation of Rule 9(b).

only challenged transaction to which Cyrus was a party – there is no allegation of any intent at all, let alone fraudulent intent.  *See* Cyrus Mem. at 20.

Instead of confronting these glaring deficiencies, Plaintiff cites irrelevant allegations – many of which are not even found in the Complaint – about Defendants' acting "in concert," their alleged "insider status," and their alleged CDS positions.  Plaintiff's arguments are unsupported by the facts alleged in the FAC and fail as a matter of law.

*First*, Plaintiff's claim that GSO and Cyrus "worked in concert," Opp. at 29, is not supported by any factual allegations in the FAC, but instead based on new allegations in the Opposition that Cyrus and GSO "coordinated" and worked "together" for a "common purpose." *Id.* at 22, 29, 39.  The FAC contains no such allegation.  This repeated attempt to amend a complaint through an opposition brief is particularly shocking, given that, just months ago, Plaintiff's counsel was found to have "acted in blatant disregard of the Federal Rules of Civil Procedure in dedicating the majority of their brief on a motion addressed to the pleadings to assertions of fact nowhere referenced in the pleadings."  *Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*, No. 18-cv-6658 (JSR), 2020 WL 159765, at *2 (S.D.N.Y. Jan. 13, 2020).  Plaintiff has ignored this warning, and these efforts to do the same thing here should be rejected.

*Second*, Plaintiff's attempt to suggest that Cyrus "exercised control over the Norske Board" also has no basis in the FAC (or in reality).  Opp. at 38.  In its Opposition, Plaintiff alleges that Cyrus "leverag[ed] [its] insider status" to "force", "push", and "compel" the Board to "accede to the Defendants' will."  *Id.* at 2, 26, 34.  But these allegations are raised for the *first time* in Plaintiff's Opposition.  Nowhere does the FAC allege that Cyrus "forced" the Norske Board to do anything.  To the contrary, the FAC alleges that the interaction between the Defendants and the

Norske Board was a "negotiation."  FAC ¶¶ 85, 90, 101.  Likewise, Cyrus's proposal of two potential board members to Norske's election and remuneration committee did not constitute "control" of the Norske Board.  These directors had to be duly elected by a majority of the outstanding shares, and GSO and Cyrus never had such a majority, even collectively.  FAC Exs. 9 & 7 at 1.  Ultimately, even if these were "GSO/Cyrus Board Members," they had no ability to control the Norske Board's decisions.  They represented only two seats on a six-person board. FAC Ex. 16 at 1.

*Third*, the FAC contains conclusory assertions that Cyrus had "insider knowledge" and "insider status," FAC ¶¶ 4, 5, 161, 190, but offers no factual allegations to make those conclusions even remotely plausible.  An "insider" must have "at least a controlling interest in the debtor" or "exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Velo Holdings Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012); *see also Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 352 (S.D.N.Y. 2013) ("courts routinely dismiss non-statutory insider claims") (collecting cases). The FAC contains no such allegation.  To the contrary, Cyrus is alleged to have held at most 9.96% of Norske shares, and the disputed transactions are alleged to have resulted from "negotiation" with, not control of, the Norske Board, which is alleged to have acted independently and at arm's-length.  *See* Cyrus Mem. at 9-11; *see also* Opp. at 26 (conceding that "Defendants' initial efforts to push the company into the Second Restructuring met opposition and failed").  On these allegations, Cyrus cannot be deemed an "insider." *See In re Coin Phones, Inc.*, 153 B.R. 135, 140-142 (Bankr. S.D.N.Y. 1993) ("[A] debtor's inferior bargaining position does not transform a creditor into a control person").  In any event, insider status "is to be determined on the exact date

11

of the challenged transfer." *Capmark*, 491 B.R. at 344. By the time of the alleged Transfer, Cyrus had already sold its holdings in the 2016 SUNs. FAC ¶ 125.

*Fourth*, Plaintiff cannot establish an inference of fraudulent intent based on Cyrus's alleged CDS position. First of all, Plaintiff's CDS theory does not make sense. The FAC alleges that "Defendants were *sellers* of CDS protection in connection with certain Norske debt instruments" and that this gave Defendants "a motivation by them to take action to *avoid* a default." FAC ¶ 63 (emphasis added). Transactions made to *avoid* default are presumptively in good faith, particularly where (as here) there is no allegation that the company's board breached its fiduciary obligations in approving the transactions. Supp. Ro Decl. ¶ 15; *accord CarCo*, 435 B.R. at 194 (dismissing intentional fraudulent conveyance claim with prejudice where disputed transaction was part of restructuring process); *see also In re Sabine Oil & Gas Corp.*, 562 B.R. 211, 231 (S.D.N.Y. 2016) ("the business judgment rule creates a presumption that directors of a company act in good faith and in the best interests of the corporation"). In any event, a creditor's subjective "motivation" for a transaction, whether based on CDS or on some other commercial rationale, is irrelevant as a matter of law because creditors are not fiduciaries of the debtor.[6] *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) (collecting cases); Supp. Ro Decl. ¶ 16.

### C.    Cyrus Cannot be Liable for Transactions to Which it Was Not a Party.

The FAC fails to state an avoidance claim as to the Upstreaming or Transfer for the additional reason that Cyrus was not a party to either of those transactions. Nor does Plaintiff

---

[6] Indeed, in the "Citibank Action," where a trustee for certain holders of SSNs sought (unsuccessfully) to enjoin the January 2016 Exchange Offer, *see* FAC ¶ 111, Judge Sullivan rejected any discovery into CDS positions of Norske creditors, precisely because they are not fiduciaries of the Company. Transcript of Oral Argument at 8:19-23, *Citibank, N.A. v. Norske Skogindustrier ASA*, No. 16-CV-850 (RJS), 2016 WL 1052888 (S.D.N.Y. Mar. 2, 2016), ECF No. 62 ("[W]hether they have other, more complicated reasons under credit default swaps, I don't much care unless you're suggesting to me that they are improperly influencing the board to do things in breach of their fiduciary duties.").

allege that Cyrus received any proceeds from the Upstreaming or Transfer. *See* FAC ¶ 125 (admitting that Cyrus sold its holdings in the 2016 SUNs prior to the Transfer). As explained in Cyrus's Motion, this is fatal to any avoidance claim. Cyrus Mem. at 22. Plaintiff's only answer is to argue that the Upstreaming and Transfer must be "collapsed" with the Cyrus Sale, even though the Cyrus Sale was executed months before any Transfer, even though the Cyrus Sale makes no reference to any Upstreaming or Transfer, and even though there is no allegation that Norske even knew of the Cyrus Sale when the Company decided to undertake the Upstreaming and Transfer. *See id.* at 24-25. The Opposition offers no basis to collapse the transactions.[7]

*First*, Plaintiff argues that the Cyrus Defendants "ignore that the Cyrus Sale was actually part of the consideration for their joint funding of the NSF." Opp. at 22. But the "NSF" was not the Upstreaming or the Transfer. The NSF was a €100 million credit facility, the proceeds of which would be used to replace an existing credit facility and "for general corporate purposes." FAC Ex. 12 at 6. There is no allegation that the NSF was conditioned upon any Upstreaming or Transfer. Cyrus is not alleged to have participated in, let alone dictated, any subsequent decision by the Norske Board relating to the later Upstreaming and Transfer. And the FAC's own exhibits establish that the Board made the decision on its own. *See* FAC Ex. 17 at 39 ("The Board will decide on the group's ability to complete the redemption of the 2016 bond in June based on cash balances, various liquidity initiatives and improved cash flow from operations in 1H16.").

*Second*, Plaintiff argues that the Cyrus Sale, Upstreaming, and Transfer were "part of a single scheme" that Cyrus "accomplished in a coordinated plan" with GSO. Opp. at 22, 35. But alleged coordination with GSO is not the same as coordination with *Norske*. The FAC does not

---

[7] Plaintiff argues that New York law does not apply to the Court's analysis of whether to collapse the transactions. Regardless, there is no basis to collapse the transactions under either New York or Norwegian law. *See* Cyrus Mem. at 24-25.

allege that the Norske Board's approval of the Upstreaming and Transfer was part of an "integrated scheme" with the Cyrus Sale. Indeed, there is no allegation that Norske even knew of the Cyrus Sale when it decided to undertake the Upstreaming and Transfer. In the absence of such allegations, the transactions cannot be collapsed.

## III.    THE FAC FAILS TO STATE A CLAIM UNDER § 17-1 OF NORWAY'S PUBLIC LIMITED LIABILITY COMPANIES ACT.

### A.    The FAC Fails to State a Claim Under § 17-1(1).

Plaintiff does not dispute that, to state a claim under the first paragraph of § 17-1 of Norway's Public Limited Liability Companies Act, Cyrus must be alleged to have acted as a shareholder "in said capacity." Horstad Decl. ¶ 74 ("A shareholder may be liable for damages pursuant to Section 17-1 of the Companies Act for actions performed 'in said capacity'."). Plaintiff also does not dispute that the transactions alleged to have violated § 17-1 are the transactions comprised in the "Second Restructuring," where Cyrus is alleged to have negotiated and entered into a financing agreement with the Company as a *creditor*, not a shareholder. And Plaintiff concedes that the Second Restructuring was not considered or voted on by the General Assembly of shareholders, *id.*, which would be the only way in which Cyrus could have acted in a capacity as "shareholder" to effect the Second Restructuring.

In its Opposition, Plaintiff does not even come close to addressing these deficiencies. Plaintiff offers unsupported, cryptic commentary from its proffered expert on Norwegian law suggesting that "it is not of decisive importance" whether the disputed transactions were approved by the Company's shareholders. *Id.* Plaintiff then builds on that premise to draw a conclusion not even offered by the proffered expert: that "the Plaintiff need merely allege that the Defendants intentionally or even negligently *influenced* the Norske Board to pursue the transactions described in the FAC." Opp. at 42 (emphasis added). This argument fails.

14

*First*, the idea that shareholder "influence" could state a claim under § 17-1 is not supported by Norwegian law and does not make sense. Anyone can have "influence." But the only way that shareholders can have influence "in said capacity" is by voting their shares. Supp. Ro Decl. ¶ 17 (claims against a shareholder can only arise through "active use of the shareholder's powers at the general meeting"). If § 17-1 were extended to some indefinite category of other conduct, then this would render meaningless both the statutory term "shareholder" and the requirement of conduct "in said capacity." Supp. Ro Decl. ¶ 19 ("[I]t is incorrect that the 'in said capacity' requirement is of less importance in this case"). And Plaintiff's theory of non-voting "influence" is at odds with the statutory requirement of a "causal link between the damaging action and the loss." Opp. at 42 (citing Horstad Decl. ¶ 75). Absent voting their shares, shareholders cannot "cause" a company to do anything.

*Second*, even if non-voting "influence" were sufficient to state a claim based on § 17-1(1) or non-statutory law,[8] Opp. at 42, the FAC does not allege facts plausibly establishing any "causal link" between non-voting shareholder "influence" and the Second Restructuring. Plaintiff attempts to argue that Cyrus and GSO used their "collective substantial equity position" to "force" the Norske Board to approve the Second Restructuring, complete the NSF, and repay the 2016 SUNs. Opp. at 23. But as explained above, this allegation is raised for the *first time* in Plaintiff's Opposition. Nowhere does the FAC allege that Cyrus "forced" the Norske Board to do anything. *See supra* at 10-11. Cyrus did not have the ability to control or even influence the Norske Board, much less "force" it to take any action. Cyrus Mem. at 9-11.

---

[8] Plaintiff contends that its §17-1 claim "includes" Norwegian non-statutory claims. Opp. at 42. To succeed on such a claim, Plaintiff argues that it has to show "1) that the damage was caused intentionally or negligently 2) that there is an economic loss on the creditor community's hand and 3) that there is a *causal link between the damaging action and the loss.*" Horstad Decl. ¶ 75 (emphasis added). Cyrus could have only acted as a creditor, in which case its actions would be subject to §5-9, or as a shareholder, in which case its actions could be subject to § 17-1(1). As explained in the Supplemental Ro Declaration, this attempt to circumvent the requirements of § 5-9 and § 17-1(1) by relying on Norwegian non-statutory law is impermissible. Supp. Ro Decl. ¶ 21.

15

### B.      The FAC Fails to State a Claim Under § 17-1(2).

Plaintiff does not dispute that, to state a claim under the second paragraph of § 17-1, there must be an allegation that the underlying decision maker – here, the Norske Board – took some action that was against the best interests of the debtor.  There is no such allegation.  Plaintiff argues that the transactions at issue "harmed the company."  Opp. at 23 n.10.  But, as established above, the only relevant "company" here is Norske ASA, the debtor whose insolvency has been recognized in these Chapter 15 proceedings, and there is no allegation of any harm to that company.  *See supra* at 2-5.  To the contrary, as the exhibits to the FAC establish, the "successful completion of the proposed equity and liquidity initiatives and the exchange offer to 2017 note holders would significantly improve cash balances and equity level for the group."  FAC Ex. 12 at 7.

In any event, if Plaintiff were to allege that the Norske Board's decision was somehow improper and against the best interest of Norske ASA, then the claim would be foreclosed under the *Wagoner* Rule.  *See* Cyrus Mem. at 28 n.9.  Plaintiff tries to thread this needle by inventing new allegations not found anywhere in the FAC:  that the Norske Board "may well have acted negligently or recklessly."  Opp. at 46.  This is directly contradicted by what is alleged in the FAC:  that, at all relevant times, the Norske Board relied in good faith on the advice of highly sophisticated and independent advisors, including Linklaters LLP, an international law firm, Advokatfirmaet Wiersholm AS, one of the largest law firms in Norway, and Houlihan Lokey, the international restructuring advisory firm.  FAC Ex. 1 at 363 & Ex. 2.  In another failed effort to get around the *Wagoner* Rule, Plaintiff argues that the rule does not apply to claims against "insiders" and those "who exercised control over the Norske Enterprise through board members they appointed."  Opp. at 46.  But as described above, the FAC does not establish that Cyrus meets the definition of an insider or otherwise exercised control over Norske.  *See supra* at 11-12.

16

## IV.    THE FAC FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

As explained in Cyrus's opening brief, Norwegian law does not recognize the claim of unjust enrichment. Cyrus Mem. at 31; Ro Decl. ¶¶ 62-64; *see also Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 CIV. 2946 (DLC), 2004 WL 1944457, at *3 (S.D.N.Y. Aug. 31, 2004) (granting summary judgment on unjust enrichment claim, noting that "[t]he submissions of the parties' experts on Norwegian law established that 'there is no general principle' of unjust enrichment under Norwegian law"). Indeed, Plaintiff did not even include an unjust enrichment claim under Norwegian law in its Rule 44.1 notice. FAC ¶ 36. Plaintiff's expert now references a "general principle" of unjust enrichment under Norwegian law. Horstad Decl. ¶ 80. But this "cannot be regarded as a manifestation of a general principle in Norwegian law of unjust enrichment as a legal basis for a claim." Supp. Ro Decl. ¶ 28. Unjust enrichment is not a standalone claim under Norwegian law. *Id.* at ¶ 27. Rather, unjust enrichment under Norwegian law is simply a *remedy*, where there is already a statutory basis for liability. *Id.* Plaintiff's expert notes that the damages provision found in § 5-11 of the Norwegian Recovery Act provides for recovery resulting from "the other party's enrichment." Horstad Decl. ¶ 32. But that is only a damages provision, not a basis for liability. Supp. Ro Decl. at ¶ 29. In any event, it applies only to claims under § 5-5, and the FAC does not assert a § 5-5 claim against Cyrus. Instead, the only Recovery Act claim against Cyrus is asserted under § 5-9. The damages provision for § 5-9 claims is § 5-12, and § 5-12 does not provide for enrichment damages. *See id*.

Plaintiff fails in trying to avoid application of Norwegian law to the unjust enrichment claim.[9] Plaintiff does not dispute that the "center of gravity" here is Norway. Instead, Plaintiff

---

[9] Plaintiff argues that "Defendants sidestep the question of whether there is an actual conflict between New York law and Norwegian law" with respect to the unjust enrichment claim. Opp. at 10. But Cyrus's Motion makes clear that unjust enrichment is not a "cognizable legal theory under Norwegian law", unlike under New York law. Cyrus Mem.

argues for application of the "interest test," rather than the "center of gravity" test, because here the FAC is asserting unjust enrichment as an alternative to fraud, not breach of contract. Opp. at 11. But regardless of the allegations on which they are based, unjust enrichment claims are not the type of "conduct-regulating" laws that would demand application of the interest test. Conduct-regulating laws "have the prophylactic effect of governing conduct to prevent injuries from occurring." *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 423 (S.D.N.Y. 2013); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 47 (2d Cir. 2013) (noting that parties rely on conduct-regulating rules to "govern their primary conduct"). By contrast, unjust enrichment "is a quasi-contractual remedy" that proscribes disgorgement *after* a defendant is found to have acted improperly. *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 CIV.1514 (PAC)(HBP), 2010 WL 445192, at *7 (S.D.N.Y. Feb. 8, 2010). Accordingly, unjust enrichment claims continue to be analyzed under a center-of-gravity test, even where asserted alongside fraud. *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148–49 (S.D.N.Y. 2008) (applying interest analysis to fraud claim sounding in tort and significant contacts/center of gravity test to unjust enrichment claim arising out of the same conduct).

In any event, Plaintiff's unjust enrichment claim also fails under New York law. Plaintiff again abandons any claim based on the Cyrus Sale. Opp. at 43 (omitting the Cyrus Sale from list of transactions that allegedly resulted in Cyrus's alleged unjust enrichment). Plaintiff instead argues that Cyrus was enriched by the "entire series" of transactions because it was able to "realize substantial value" on the 2016 SUNs and avoid its CDS obligations. Opp. at 43. But Cyrus is not alleged to have received any payment of the 2016 SUNs at maturity; to the contrary, Cyrus is

---

at 31-32; *see also Kingdom 5-KR-41*, 2004 WL 1944457, at *2 (S.D.N.Y. Aug. 31, 2004) ("Norway does not recognize a claim for unjust enrichment, while such claim is recognized under New York law."). In any event, for the avoidance of doubt, Cyrus contends that a conflict of laws exists with respect to the unjust enrichment claim.

alleged to have sold the bonds for 68% of their par value.  FAC ¶ 125.  As to the allegation about avoiding a CDS obligation, there is no allegation that any such "enrichment" came at "plaintiff's expense."  Avoiding the CDS obligation is alleged to have occurred by allowing the debtor to *avoid* a default – something that the Norske Board believed independently was a good thing for the Company.[10]  *See supra at* 12.

Finally, Plaintiff continues to have no meaningful answer to the problem that unjust enrichment claims cannot stand where, as here, they are based on transactions governed by written agreements.  *See* Cyrus Mem. at 33.  Plaintiff's only response, which oddly appears in the Opposition's choice-of-law discussion, is to point out that its unjust enrichment claim is pleaded alongside fraudulent transfer, not breach of contract.  Opp. at 11.  But the same was true in *Stillwater Asset Backed Offshore Fund Ltd.*, 559 B.R. 563 (Bankr. S.D.N.Y. 2016), which Cyrus cited in its Motion and which goes unaddressed in Plaintiff's Opposition.  There, the court dismissed unjust enrichment claims when "the challenged transfers were governed by written agreements" finding that the plaintiff's "remedies must lie in fraudulent transfer claims."  *Id.* Plaintiff's unjust enrichment claims should meet the same fate here.

---

[10] Plaintiff is incorrect in suggesting that *Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*, No. 18-cv-6658 (JSR), 2019 U.S. Dist. LEXIS 62745 (S.D.N.Y. Apr. 11, 2019), is "instructive."  Opp. at 43.  That was a case where, according to Plaintiff's own brief, millions of dollars were transferred, at the expense of the debtor, "directly from the debtor to the investors' funds."  Opp. at 43 (citation and alterations omitted).  Here, by contrast, there is no allegation that the Debtor transferred anything to Cyrus, "directly" or otherwise.  Cyrus Mem. at 32-33.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Cyrus Defendants respectfully request that the Court dismiss

Plaintiff's claims against the Cyrus Defendants with prejudice.

Dated: April 21, 2020          By:  /s/ Duane L. Loft
New York, NY                Duane L. Loft (dloft@bsfllp.com)
                            Anastasia Cembrovska
                               (acembrovska@bsfllp.com)
                            BOIES SCHILLER FLEXNER LLP
                            55 Hudson Yards
                            New York, New York 10001
                            Telephone:  (212) 446-2300
                            Facsimile:  (212) 446-2350

                            *Attorneys for the Cyrus Defendants*