UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE BANKRUPTCY ESTATE OF NORSKE SKOGINDUSTRIER ASA<br><br>Debtor in a<br>Foreign Proceeding. | NOT FOR PUBLICATION<br><br>Chapter 15<br><br>Case No. 18-13571 (MG) |
| THE BANKRUPTCY ESTATE OF NORSKE SKOGINDUSTRIER ASA,<br><br>Plaintiff,<br><br>vs.<br><br>CYRUS CAPITAL PARTNERS, L.P., *et al.*,<br><br>Defendants. | Adv. Pro. No. 18-01846 (MG) |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO FILE THE THIRD AMENDED COMPLAINT**

*A P P E A R A N C E S:*

HOLLAND AND KNIGHT LLP
*Attorneys for Plaintiff The Bankruptcy
Estate of Norske Skogindustrier ASA*
31 West 52nd Street
New York, New York 10119
By:   Warren E, Gluck, Esq.
       Richard A. Bixter, Jr., Esq.
       Robert J. Burns, Esq.
       Phillip W. Nelson, Esq.

CRAVATH, SWAINE & MOORE LLP
*Attorneys for GSO Defendants*
825 Eighth Avenue
New York, New York 10019
By:   Paul H. Zumbro, Esq.
        Lauren A. Moskowitz, Esq.
        Omid H. Nasab, Esq.

PALLAS PARTNERS LLP
*Attorneys for Cyrus Defendants*
75 Rockefeller Plaza
New York, New York 10019
By:   Duane L. Loft, Esq.
        Anastasia Cembrovska, Esq.
        Mark C. Davies, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is a motion (the "Motion," ECF Doc. # 182) by Tom Hugo Ottesen, the duly appointed trustee and foreign representative ("Petitioner" or "Trustee") of Plaintiff, the Bankruptcy Estate of Norske Skogindustrier ASA ("Norske Estate" or "Plaintiff"), a bankruptcy estate currently being administered under the supervision of the Oslo County Court (the "Norway Bankruptcy"). The Plaintiff seeks to file its third amended complaint in the adversary proceeding against the Defendants.[1] A proposed third amended complaint is attached to the Motion (the "Third Amended Complaint," ECF Doc. # 182-1).

The Defendants filed an objection to the Motion (the "Objection," EFC Doc. # 183) as well as the declaration Margrethe Buskerud Christoffersen (the "Christoffersen Decl.," ECF Doc.

---

[1] The Defendants are, collectively, the Cyrus Defendants and the GSO Defendants. Cyrus Defendants are Cyrus Capital Partners, L.P., Cyrus Select Opportunities Master Fund, Ltd., Cyrus Opportunities Master Fund II, Ltd., CRS Master Fund, L.P., and Crescent 1, L.P. The GSO Defendants are Blackstone Alternative Credit Advisors LP f/k/a GSO Capital Partners LP, GSO Special Situations Master Fund LP, GSO Aiguille des Grands Montets Fund I LP, GSO Aiguille des Grands Montets Fund II LP, GSO Aiguille des Grands Montets Fund III LP, GSO Coastline Credit Partners (Cayman) LP, GSO Credit-A Partners (Cayman) LP, GSO Palmetto Opportunistic Investment Partners (Cayman) LP, GSO Cactus Credit Opportunities Fund (Cayman) LP, GSO Oasis Credit Partners (Cayman) LP, Steamboat Credit Opportunities Master Fund LP, GSO Credit Alpha Trading (Cayman) LP, and GSO Churchill Partners LP.

# 185) and the declaration of Omid H Nasab (the "Nasab Decl.," ECF Doc. # 184), which both attach exhibits. The Plaintiff filed a reply in further support of its Motion (the "Reply," ECF Doc. # 187) and a supporting declaration of Richard A. Bixter (the "Bixter Decl.," ECF Doc. # 188) which attaches exhibits. Defendants filed a motion (ECF Doc. # 189) for leave to file a sur-reply, which the Court granted. (*See* ECF Doc. # 190.) The sur-reply (the "Sur-Reply") was filed at ECF Doc. ## 189-01 and 189-02. The Court held a hearing on the Motion on April 27, 2023, at which it **GRANTED** the Motion and **OVERRULED** Defendants' Objection. An order granting the requested relief was entered at ECF Doc. # 191. The Court writes separately here to explain the reasoning for its decision.

## I.  BACKGROUND

### A.  Procedural Background

Familiarity with the Court's other opinions in this matter is assumed as the Court will not recite the complicated facts that led to this dispute. *See In re Bankr. Est. of Norske Skogindustrier ASA*, 633 B.R. 640 (Bankr. S.D.N.Y. 2021) (ECF Doc. No. 131); *In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. 717 (Bankr. S.D.N.Y. 2021) (ECF Doc. # 97). This Opinion sets forth a limited procedural background relevant to ruling.

On May 20, 2021, the Plaintiff filed its Second Amended Complaint (ECF Doc. # 108), which is currently the operative complaint in this proceeding. (Motion ¶ 8.) The Second Amended Complaint set out allegations against Defendants regarding a 2015 refinancing named Carra II (the "Second Restructuring"), (Second Amended Complaint ¶ 93), and a related bond repurchase scheme (the "Bond Repurchase Scheme"). (*Id.* ¶ 162.)

On April 29, 2021 and October 4, 2021, the Court issued two opinions (ECF Doc. ## 97 and 131) that resulted in a denial of the Defendants' motions to dismiss the following claims: (i)

3

claims under Section 5-9 of the Norwegian Recovery Act against all Defendants; (ii) a claim under Section 5-5 of the Norwegian Recovery Act against the GSO Defendants; and (iii) claims against all Defendants seeking recovery of economic loss under Section 17-1 of the Public Limited Liability Companies Act and Norwegian common law. (*Id.* ¶ 9.) The Second Case Management Plan and Scheduling Order (the "Case Management Order," ECF Doc. # 125 (Sept. 8, 2021)), authorized the parties to conduct discovery, including discovery governed by the Hague Evidence Convention, and required further leave of Court before any further amendment of the pleadings. (*Id.* ¶ 10.) At a status conference on March 9, 2023, counsel confirmed that fact discovery is complete following document production and depositions of witnesses located in the United States, the United Kingdom and Norway. (*Id.* ¶ 11.)

### B. The Proposed Amendments

The proposed Third Amended Complaint seeks to make several amendments, most not objected to by Defendants. The specific portions of the amendments to which Defendants object (the "Challenged Amendments") are highlighted in Exhibit 19 to the Nasab Declaration. The Defendants object to three categories of amendments: 1) "§ 17-6 Allegation" (Third Amended Complaint ¶ 371); 2) the "Highly Confident Letter Allegations" (Third Amended Complaint ¶¶ 12–13, 94, 201–02, 331, 348, 363, 378, 379, 382–83); and 3) the "Project 25 Allegations" (Third Amended Complaint ¶¶ 15–17, 94, 154, 156, 200, 303–11, 331, 348, 363, 378–81, 383–86). (Objection at 8.)

The § 17-6 Allegation states that "§ 17-6 of the Public Limited Liability Companies Act permits a company such as Norske Skogindustrier to bring claims under § 17-1 for the economic loss suffered by its subsidiary companies due to the intentional and/or negligent acts of third parties." (*Id.* at 16 (citing Third Amended Complaint ¶ 371).) The Defendants argue that the

4

added § 17-6 Allegation is futile and thus should not be permitted.  Defendants argue the § 17-6 Allegation "clearly misstates Norwegian law, which does not permit the [Norske] Estate to claim losses for other companies."  (*Id.* at 16 (citing Christoffersen Decl. ¶¶ 6, 26–28).)  Plaintiff responds that it is not using § 17-6 to assert an independent cause of action and includes it because it supplies a priority rule.  (Reply at 10.)

Plaintiff summarized the Highly Confident Letter Allegations and Project 25 Allegations as follows:

> The Third Amended Complaint maintains the Plaintiff's position that the Defendants' intent in purchasing increased equity in Norske and seeking replacement of all independent Norske Board members was to obtain increased influence and "control" of Norske. (*Id.* ¶¶ 162–168). However, the Plaintiff alleges that it has learned that the Defendants ensured implementation of the Second Restructuring through a series of misrepresentations to Norske Management and the Norske Board, both through oral statements and two Highly Confident Letters, falsely promising that the Defendants would be willing to provide more than $400 million in M&A financing following the Second Restructuring, a promise that never could have been fulfilled due to the nature of the Defendants' "steepener CDS trade" and the GSO Defendants' liquidity issues. (*Id.* ¶¶ 153–156).  According to the Plaintiff, testimony from Norske's former management and Board members confirmed that: (i) the Second Restructuring was not a comprehensive solution to Norske's financial issues, but only a stopgap to provide a runway to effectuate a merger, or industry consolidation, of the European paper and pulp market; and (ii) the proposals made by the Defendants were favored over the proposals of Norske's secured lenders due to the Defendants' support of "industry consolidation" and the Highly Confident Letters. (*Id.* ¶¶ 190–207).  The Plaintiff claims that these misrepresentations were only revealed to Norske in January 2017, when the GSO Defendants refused to provide the very M&A financing promised in the Highly Confident Letters in the absence of an engineered "hard default" on Norske's bond obligations, due to the Defendants' "steepener CDS trade." (*Id.* ¶¶ 303–311).

(Motion ¶ 5.)

The Defendants argue that the Court should reject the allegations related to the Highly Confident Letter and Project 25 as unduly prejudicial.  They assert that fact discovery has closed and that most of the relevant witnesses are unavailable at trial and have already provided their

5

trial testimony through the depositions that took place last year, including all of the Norway-based witnesses. (Objection at 14.) The Defendants maintain that the Highly Confident Letter Allegation and Project 25 Allegation present new theories that were not fully addressed in discovery and would result in "new problems of proof." (*Id.*) Plaintiff disagrees and argues that the new allegations are merely intended to conform the pleadings to the evidence obtained in discovery. (Motion ¶ 4.) Plaintiff argues that the deposition witnesses in Norway were examined and cross examined extensively about the Highly Confident Letter and Project 25. (*See* Reply at 6–9.)

## II.    LEGAL STANDARD

Courts within the Second Circuit routinely grant plaintiffs leave to amend complaints to conform to the evidence obtained through discovery. Rule 15 of the Federal Rules of Civil Procedure, which governs motions for leave to amend pleadings both pretrial and during trial, provides in pertinent part:

> (a) <u>Amendments Before Trial.</u>
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> (b) <u>Amendments During and After Trial.</u>
>
> (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move at any time, even after judgment to amend the pleadings to conform them to the evidence and

6

> to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15 (a) & (b).

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." This is a "'liberal' and 'permissive' standard." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). "This permissive standard is consistent with our 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The decision whether to allow an amendment is left to the "broad discretion" of the trial court judge. *See Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

A court may deny a motion to amend only on grounds of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Sacerdote*, 9 F.4th at 115. "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Rather, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Sherman v. Fivesky, LLC*, 19-CV-8015 (LJL), 2020 WL 5105164, at *3 (S.D.N.Y. Aug. 31, 2020) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

As explained in *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022), a plaintiff's ability to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure. Rule 15(a)(1) permits a plaintiff to amend her pleadings once as of right without court permission. *Id.* Thereafter, the plaintiff must obtain

leave to amend, but leave should be freely granted pursuant to Rule 15(a)(2), unless the amendment is the result of undue delay, would result in undue prejudice to the other party, or would be futile. *Id.* The period of liberal amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. *Id.* After such a deadline, a plaintiff may amend only upon a showing of the good cause. *Id.; see Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 131–32 (S.D.N.Y. 2020) (citing *Sherman*, 2020 WL 5105164, at *1).

Once a party establishes good cause to amend, the court needs to consider "whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend." *Sec. & Exch. Comm'n v. Rio Tinto plc*, No. 17-CV-07994 (AT) (DF), 2020 WL 2504008 at *7 (S.D.N.Y. Mar. 9, 2020), *objections overruled*, No. 17-CIV-7994 (AT) (DF), 2021 WL 807020 (S.D.N.Y. Mar. 3, 2021) (quoting *Fuller v. Interview, Inc.*, No. 07-CV-5728 (RJS) (DF), 2011 WL 724533, at *3 (S.D.N.Y. Feb. 25, 2011)). "The party opposing a motion to amend bears the burden of establishing that the amendment should be denied." *Baptiste v. Suffolk Cnty.*, No. 19-CV-0042 (RPK) (VMS), 2022 WL 1224570, at *4 (E.D.N.Y. Apr. 26, 2022); *see also Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. 12-CV-5682 (JS) (AKT), 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015).

### III.    DISCUSSION

Once a Plaintiff shows "good cause" to amend, motions to amend pleadings are granted unless there is a showing of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d at 66 (citing *Foman*, 371 U.S. at 182). Here, the Motion is granted for three reasons. First, the proposed Highly Confident Letter and Project 25 Allegations merely conform the pleadings to evidence obtained in discovery, which courts routinely find to be a proper basis for an amendment. Second, the Defendants have failed to establish that the § 17-6 Allegation is futile. Finally, the Defendants have not otherwise established that allowing the proposed amendments would cause Defendants to suffer undue prejudice.

**A. The Plaintiff has Established Good Cause for the Highly Confident Letter and Project 25 Allegations**

With respect to the Highly Confident Letter and Project 25 Allegations, the Plaintiff argues that these amendments merely conform the pleadings to the evidence gathered in discovery and that accordingly the amendments are proper. The Court agrees.

As an initial matter, the Plaintiff's papers are unclear whether Plaintiff believes it must satisfy both Federal Rules of Civil Procedure Rule 15 and 16 to amend the complaint. Rule 15 governs amendments before the scheduling order's deadline to amend pleadings. *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2:16-CV-1545 (DRH) (ST) 2022 WL 426199, at *4 (S.D.N.Y. Feb. 11, 2022). Rule 16 applies when a scheduling order's deadline to amend pleadings has passed and requires a showing of "good cause" for the proposed amendment. *Id.* at *5. Further, "[w]here . . . a scheduling order governs amendments to the complaint, and a plaintiff wishes to amend after the scheduling deadline has passed, the plaintiff must satisfy *both* [Rules] 15 and 16 to be permitted to amend." *Id.* at *4 (quoting *Pasternack v.*

9

*Shrader*, 863 F.3d 163, 174, 174 n.10 (2d Cir. 2017)). Here the Case Management Order provided that "[a]mended pleadings may not be filed and additional parties may not be joined without leave of Court," but does not provide a deadline beyond which no amendment can be made. (Case Management Order ¶ 2.) The issue need not be resolved because the Court concludes that plaintiff has demonstrated "good cause." The Defendants do not argue that Plaintiffs failed to show "good cause"; they only argue that they will suffer undue prejudice if the amendments are granted. (*See* Objection at 13–25.) Plaintiff's amendments only seek to conform the pleadings to the evidence which courts routinely find is a proper basis for amendment, even after the deadline to amend in the applicable scheduling order. *See, e.g.*, *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp.*, 2022 WL 426199, at *6–7, 9 (granting motion to amend the complaint to add factual allegations premised on "evidence obtained in discovery" after the scheduling order's deadline to amend had passed) (quoting *In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012)).

Courts have consistently granted motions to amend to amplify allegations of the complaint to reflect evidence obtained in discovery. *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 13-CV-1654 (RA) (HBP), 2015 WL 4097927, at *26 (S.D.N.Y. July 6, 2015) (granting in part plaintiff's motion to file a Second Amended Complaint under Rule 15(a)(2) "to conform its pleading to the evidence"); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 550–553 (S.D.N.Y. 2022) (plaintiffs demonstrated good cause for a Sixth Amended Complaint based on evidence obtained during discovery); *Lamonica v. CEVA Grp. PLC (In re CIL Ltd.)*, Adv. Pro. No. 14–02442–JLG, 2018 WL 3031094, at *4 (Bankr. S.D.N.Y. June 15, 2018) (granting trustee's motion to amend complaint "to conform it to evidence developed during

discovery, to delete claims the Trustee voluntarily agreed to dismiss, and to clarify and amplify certain existing allegations").

Moreover, courts routinely grant motions to amend where the amendments arise from the same set of operative facts set forth in the original complaint and the new allegations simply "amplify" allegations set forth in the original complaint. For example, in *Khazin v. City of N.Y.* the court granted in part the motion to amend because the proposed amendments arose from the same set of operative facts:

> In contrast, when proposed amendments are "merely variations on the original theme," rather than "new claims concerning a different period of time ... and alleging an entirely new set of operative facts," courts are more likely to grant leave to amend. *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (distinguishing *Ansam Assocs.*). In such cases, the substance of the original complaint provides a "forecast" of the new claims, thereby reducing the prejudice to the non-moving party. *Id.*; *see also Aulicino v. New York City (Dep't of Homeless Servs.),* 2010 WL 2787548, at *2 (E.D.N.Y. July 14, 2010) ("To determine whether a party will be prejudiced by a proposed amended pleading ... Courts [ ] consider the extent to which the new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim." (internal citations omitted)).

17-CV-3779 (LDH) (SMG), 2020 WL 13518233, at *6 (E.D.N.Y. Jan. 29, 2020).

Here, Plaintiff argues that the Project 25 Allegations and the Highly Confident Letter Allegations derive from the same common nucleus of operative fact that the Plaintiffs originally alleged. (Reply at 2.) The Court agrees. These new allegations relate to the Plaintiff's core theory that the Norske Estate suffered economic loss due to the Second Restructuring and the Bond Repurchase Scheme. (*Id.* at 3.) Originally, Plaintiff argued that Defendants had corruptly pressured and induced the entire management and board to act against the obvious interests of company. (*Id.* at 5.) They argue now that discovery made it clear that this was a two-step process: in step one, Defendants corruptly induced and pressured the Norske CEO and Chairman to push forward the Second Restructuring instead of a Chapter 11 or comprehensive restructuring

11

scheme, by promising nearly 400 million Euro of merger financing via the Highly Confident Letters and various threats; in step two, Defendants and Norske's CEO and Chairman misled the Norske Board such that the Norske Board did not know about or understand its true options and the outcome would be a *fait accompli*. (*Id.*) These allegations thus fall into the "variations on the original theme" category of allegations that courts allow via amendment. *Khazin v. City of N.Y*, 2020 WL 13518233, at *6.

Defendants do not distinguish the case law allowing amendments to conform the pleadings to the evidence. Nor do they argue that the Highly Confident Letter and Project 25 Allegations do not arise out of the same nucleus of operative fact as Plaintiff's prior allegations. Instead, they argue only that these allegations are made too late and are highly prejudicial. (*See* Objection at 13–29.) The Court concludes that Plaintiff has convincingly argued that there is "good cause" for amending the complaint with the Highly Confident Letter and Project 25 Allegations because they are conforming the pleadings to the evidence obtained in discovery. *See, e.g., Mellon Bank F.S.B. v. Alexander Wescott & Co.*, No. 98-2650(AGS), 1999 WL 504914, at *5 (S.D.N.Y. July 16, 1999) (noting that "[i]t is not inappropriate to permit an amendment to pleadings in order to conform the pleadings to the evidence unearthed by discovery").

### B. The § 17-6 Allegation Is Not Futile

Plaintiff seeks to add the following allegation: "§ 17-6 of the Public Limited Liability Companies Act permits a company such as Norske Skogindustrier to bring claims under § 17-1 for the economic loss suffered by its subsidiary companies due to the intentional and/or negligent acts of third parties." (Third Amended Complaint ¶ 371.) Defendants argue that this misstates Norwegian law, which does not permit Plaintiff to claim losses for other companies. (Objection

12

at 10 (citing Christoffersen Decl. ¶¶ 6, 26–28).) Defendants argue that Plaintiffs seek to add this allegation because they cannot prove damages against Norske ASA, the parent company, and want to be able to prove damages against subsidiaries. (*Id.* at 10–11.) Plaintiff clarifies in the Reply that it only seeks damages under Section 17-1, and that it cited to § 17-6 "for the sole proposition that the Plaintiff is not prohibited from bringing its Section 17-1 claims for the Norske Estate's economic loss simply because Norske subsidiaries may theoretically have similar claims against Defendants." (Reply at 10.) In essence, the reference to § 17-6 seems intended to supply a priority rule in the event that a shareholder and a company have competing claims, not to set forth an independent cause of action. (*See id.*).

The Defendants do not appear to disagree with this characterization of the law. (*See* Objection at 12; Christoffersen Decl. at ¶ 18 ("My view is thus that Section 17-6 of the Companies Act is not an independent authorisation for direct claims from shareholders, company creditors and others for the company's claims, but that the provision also applies to such claims, where there may be authorisation for such claims on other grounds.") (citing Rt 2012 543).) In their Sur-Reply the Defendants do not mention the § 17-6 Allegation or otherwise refute the Plaintiff's claims in the Reply, except to note that they still dispute the addition of the allegation. (Sur-Reply at 1 n.1). To the extent that Defendants disagree with the legal theory, they will have an opportunity to refute it on the merits, but they have not articulated any prejudice from this amendment. Accordingly, given that the Plaintiff has clarified the meaning of this allegation, the Court is satisfied that the § 17-6 Allegation is not a futile allegation that fails as a matter of law under Norwegian law and should be permitted.

13

**C. Defendants Have Not Otherwise Established Undue Prejudice**

Once a Plaintiff has established "good cause" for the amendment, "the party opposing a motion to amend bears the burden of establishing that the amendment should be denied." *Baptiste v. Suffolk Cnty.*, No. 19-CV-0042 (RPK) (VMS), 2022 WL 1224570, at *4 (E.D.N.Y. Apr. 26, 2022) (citing *Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. 12 Civ. 5682 (JS) (AKT), 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015)). Defendants have not met their burden. Defendants make two arguments why they would be unduly prejudiced by the amendment. Both fail. First, they argue that they did not have notice of the Highly Confident Letter and Project 25 Allegations which kept them from being able to "test" the allegations in discovery. (Objection § II). Second, they argue that the Plaintiff has offered no excuse for its delay. (*Id.* § III.)

    1. The Defendants Will Not be Unduly Prejudiced By Their Alleged Inability To "Test" The Highly Confident Letter and Project 25 Allegations in Discovery

"In determining what constitutes 'prejudice,' [courts] consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (collecting cases). Here the Defendants argue that they are prejudiced because 1) they did not have notice of these theories and will not have a chance to call these witnesses at trial and 2) Plaintiff failed to include this theory in response to contention interrogatories.

    a. *Lack of Notice and Ability to Call Witnesses at Trial*

The Defendants argue that allowing the Highly Confident Letter and Project 25 Allegations would be prejudicial because "fact discovery has closed and most of the relevant

14

witnesses in this case are unavailable at trial and have already provided their trial testimony through deposition." (Objection at 14.) As support for the proposition that such circumstances are grounds for denying a motion to amend, the Defendants cite to several cases where courts found an amendment to be prejudicial because it came on the eve of trial. (*See id.* (citing *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (affirming denial of leave to amend and noting that "[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof")); *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *7 (S.D.N.Y. Dec. 4, 2017) ("The most obvious situation in which such prejudice arises is where the motion to amend comes on the eve of trial after many months or years of pre-trial activity.").) But here, this amendment does not come on the eve of trial; in fact, no trial has even been scheduled at this juncture. To get around this issue, Defendants cite *Sec. & Exch. Comm'n v. Rio Tinto PLC*, 2020 WL 2504008 at *14 (S.D.N.Y. Mar. 9, 2020), for the proposition that where depositions were taken pursuant to the Hague Convention, and numerous witnesses would be unavailable at trial, a court should consider new allegations that arise during depositions as if they were coming on the eve of trial, notwithstanding the fact that no trial had been scheduled.

*Rio Tinto* is distinguishable. The Court in *Rio Tinto*, in denying leave to amend, focused on the fact that "many other meetings and similar events are also mentioned for the first time in the Proposed Amended Complaint" and that the "SEC has cited no evidence that at depositions, the parties questioned the relevant witnesses about these events." 2020 WL 2504008 at *12–13. Because these allegations were wholly new, the court concluded that additional discovery would be required. *Id.* at *13. Here, in contrast, the Plaintiffs do set forth evidence that 1) facts related to the Project 25 Allegations appeared in the prior Second Amended Complaint (*see* Reply at 2

15

(citing Second Amended Complaint ¶¶ 68–71, 204–206)), and 2) both Plaintiffs and Defendants asked questions in the deposition about the Highly Confident Letters and Project 25 (*see id.* at 7–9).

In their Sur-Reply, the Defendants argue that the Plaintiff's citation to deposition testimony is misleading because though some of the "factual context" for these allegations was discussed in the deposition, "the actual theories that Estate is now trying to advance were not." (Sur-Reply at 1.) They also complain that because the Plaintiff did not reveal the theory behind their questions until the last fact deposition, they have not had a chance to adequately refute this theory through deposition testimony. (Objection at 17–18.) These arguments are unconvincing.

As an initial matter, the Plaintiffs contend, and the Defendant conceded at the hearing,[2] that the Defendants did not object to the questions about the Highly Confident Letter and Project 25 Allegations, even when the Plaintiff's "new" theory was revealed. (Reply at 12.) If the Defendants want to proceed on their argument that the Court should consider these depositions to be trial testimony, then they are also bound by the law that a party "impliedly consents" to the inclusion of new allegations since they did not object to the questioning. *See Bozdogan v. 23 Ludlam Fuel, Inc.,* No. CV 16-1053 (JMW), 2022 WL 523546, at *3 (E.D.N.Y. Feb. 22, 2022) (holding unpled claims were tried by implied consent due to exploration of the claims during discovery); *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 452 (Bankr. S.D.N.Y. 2007) ("Express consent [to new allegations] may be found in a stipulation or pretrial order, and implied consent may be found where evidence is introduced at trial without objection").

At the hearing, Defendants argued for the first time that there was nothing to object to during the deposition because the Plaintiff only asked questions about the Highly Confident

---

[2] April 27, 2023 Hr'g Tr. at 26:6–9.

16

Letter and Project 25 documents but did not reveal their new theory about how these two events were connected until they sought to amend the complaint.[3] But this statement contradicts Defendants' papers. In their Objection, the Defendants argued that "the first time that the Estates new theory surrounding Highly Confident Letters emerged was in . . . *the very last fact deposition in this case*." (Objection at 17.) The Objection further stated that "[a]fter hearing the Estate's questions attempting to make a link between the Highly Confident Letters, the Carra II transactions and Project 25 . . . Defendants were able to ask questions to rebut that link." (*Id.* at 17–18.) Thus, by Defendants' own admission, they became aware during discovery of the link the Plaintiff was trying to make. Nevertheless, Defendants did not object to this line of questioning, and to the contrary, actively questioned the witness in an attempt to rebut the link. (*See id.*)

Further, to the extent that the Plaintiff did not fully reveal their new legal theory during depositions, the Defendant has cited no law indicating that the failure to disclose to an opponent all the details of a legal theory is a form of prejudice to the Defendant. To the contrary, this Court has held that where, as here, the Defendant argues that the new allegations were introduced at trial, "a party cannot show that it suffered prejudice simply because of a change in its opponent's legal theory. " *Cross Media*, 367 B.R. at 452.

### b. Responses to Contention Interrogatories

The Defendants also argue that they are prejudiced because the Plaintiff failed to disclose this theory as part of its responses to contention interrogatories. Before the Hague depositions, Defendants served contention interrogatories and pressed for answers concerning the theory of liability for each of its claims so that they could confirm the Plaintiff's allegations before taking

---

[3] April 27, 2023 Hr'g Tr. at 27:3–6. ("They didn't ask questions about this theory so there was nothing for us to actually object to in their shift. They didn't shift their theory during the questions.").

17

trial depositions. In an email to the Norske Estate seeking answers, Defendants wrote: "[T]he Estate's refusal to answer contention interrogatories and interrogatories related to the Norske Estate's damages before the Hague depositions, which would essentially serve as trial depositions, would be prejudicial and unfair to the Defendants." (Objection at 16. (citing Nasab Decl. Ex. 4).) Plaintiff agreed to provide answers before the Hague depositions. (Nasab Decl. Ex. 4.) The Defendants argue that they were prejudiced because the Highly Confident Letter Allegations and Project 25 Allegations were not disclosed in the interrogatory answers even though they were responsive. (*Id.* at 16) The Court disagrees.

The Plaintiff objected to this interrogatory on the grounds that it was "premature" because discovery had not taken place yet and because "[p]laintiff's answer to the Interrogatory is based on information known to Plaintiff at this time and Plaintiff reserves all rights to amend." (Nasab Decl., Ex. 15 at 25–26.) Because Plaintiff developed its theory about the Highly Confident Letter and Project 25 Allegations through discovery, the Court concludes that, at the time of the interrogatory response, Plaintiff did not have this theory, and thus had nothing to disclose. (*See* Reply at 4 ("any new allegations in the [Third Amended Complaint] are the product of documentary and deposition evidence collected in this case").) Even if Plaintiff had a duty to update its interrogatory responses and did not, a question which the Court need not reach, Defendant has not established the requisite prejudice from this lack of disclosure. As noted above, the deposition transcript reveals that when the "new" theory came up, the Defendants did not object on the grounds that this was a previously undisclosed theory. (*See* Nasab Decl., Ex. 18, Ombudstvedt Tr. 266:20–267:7.) The Court concludes that if the Defendants sincerely believed that the use of this theory was a discovery violation that prejudiced them, they would have objected. They did not do so.

18

> 2. Delay Alone is Not Sufficient Prejudice to Deny Amendment
>    of the Complaint

"Delay in seeking leave to amend a pleading is not, in and of itself, a reason to deny a motion to amend," but "the Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Frenkel v. N.Y.C. Off-Track Betting Corp.*, 611 F. Supp. 2d 391, 395 (S.D.N.Y. 2009), *opinion adopted*, 701 F. Supp. 2d 544 (S.D.N.Y. 2010) (quoting *Turkenitz v. Metromotion, Inc.*, 1997 WL 773713 at *8–9 (S.D.N.Y. Dec. 12, 1997)). The Defendants argue that the amendments here are based entirely on information the Norske Estate knew or should have known before initiating this action and that the Norske Estate has offered no excuse for it delay. (Objection at 24.) The Court disagrees. The Plaintiff *does* provide an excuse for the delay. Plaintiff states that the delay stems from the fact that it only learned about these facts "following the receipt of Defendants' document and the deposition of Norske, GSO and Cyrus officials." (Motion at 13.) The Court concludes that the delay is attributable to the fact that the Plaintiff only received the relevant evidence during discovery. Thus, because there is a clear excuse for the delay, the delay is not grounds to deny the Motion. See *Frenkel v. N.Y.C. Off-Track Betting Corp.*, 611 F. Supp. at 395.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion and **OVERRULES** the Objection.

Dated:   May 8, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge