**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

In re:                                                    **NOT FOR PUBLICATION**

    THE BANKRUPTCY ESTATE OF NORSKE                    Chapter 15
    SKOGINDUSTRIER ASA,
                                                          Case No. 18-13571 (MG)

                  Debtor in a Foreign Proceeding.

-----------------------------------------------------------------------x

THE BANKRUPTCY ESTATE OF NORSKE
SKOGINDUSTRIER ASA,

                      Plaintiff,         Adv. Pro. No. 18-01846 (MG)

vs.

CYRUS CAPITAL PARTNERS, L.P., *et al.*,

                      Defendants.

-----------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER GRANTING THE CYRUS DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE NEW EXPERT OPINIONS OF MICHALE HEALY

*A P P E A R A N C E S :*

**HOLLAND & KNIGHT LLP**
*Counsel for The Bankruptcy Estate of Norske Skogindustrier ASA*
31 West 52nd Street
New York, New York 10019
By:    Warren E. Gluck, Esq. (*pro hac vice*)
       Richard A. Bixter, Jr., Esq.
       Phillip W. Nelson, Esq. (*pro hac vice*)

**PALLAS PARTNERS**
*Attorneys for the Cyrus Defendants*
75 Rockefeller Plaza
New York, New York 10019
By:    Duane L. Loft, Esq.
       Anastasia Cembrovska, Esq.
       Mark C. Davis, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion *in limine* ("Motion," ECF Doc. # 3482)

of the Cyrus Defendants (collectively, the "Defendants") in *The Bankruptcy Estate of Norske*

*Skogindustrier ASA v. Cyrus Capital Partners, L.P. et al* (Case No. 18-01846) adversary

proceeding.[1]   The Motion seeks to exclude testimony of Michael Healy, Senior Managing

Director at FTI Consulting Inc., the restructuring and damages expert of The Bankruptcy Estate

of Norske Skogindustrier ASA (the "Plaintiff" or the "Estate"), in connection with opinions Mr.

Healy offered in a supplemental declaration that Plaintiff served on September 29, 2023 (the

"Supplemental Declaration," ECF Doc. # 219-11).   Annexed to the Motion is the Defendants'

memorandum of law ("Supporting Memo," ECF Doc. # 206-1) and the declaration of Duane L.

Loft[2] ("Loft Declaration," ECF Doc. # 206-2), partner at Pallas Partners (US) LLP and counsel

to the Cyrus Defendants, both in support of the Motion.

The Motion centers on one of two models Mr. Healy prepared to calculate damages for

Plaintiff's claim under section 17-1 ("Section 17-1" and such claim, the "Section 17-1 Claim")of

the Norwegian Public Limited Liability Companies Act of 13 June 1997 ("Public Limited

Liability Companies Act").[3]   Such models were initially introduced in the combined opening

---

[1]      The Motion was filed by the GSO Defendants and the Cyrus Defendants.  On October 16, 2023, the Plaintiff and the GSO Defendants submitted a letter indicating that those parties reached a "binding agreement . . . that fully resolves the [Plaintiff's] claims against GSO."  (Letter Regarding Settlement, ECF Doc. # 221.)  Plaintiff and the GSO Defendants have requested that the Court stay the GSO Defendants' participation in the adversary proceeding pending the finalization of settlement documentation and the dismissal of the GSO Defendants.  (*Id.*)  Because the case remains pending against the Cyrus Defendants, this opinion resolves the issues raised by the Motion.  Reference herein to "Defendants" refers only to the Cyrus Defendants.

[2]      After filing of the Motion, the Defendants filed an unredacted version of the Loft Declaration on October 16, 2023 (ECF Doc. # 219).

[3]      The Third Amended Complaint includes four counts.  Counts I and II are claims against the GSO Defendants only that now appear to be settled.  Count III, pursuant to section 5-9 of the Norwegian Recovery Act of 8 June 1984 no. 59 ("Norwegian Recovery Act"), seeks avoidance of certain transactions and payment by the Cyrus Defendants to the Estate of the greater amount of (i) the total amount received by the Cyrus Defendants through the

expert report submitted by Mr. Healy and Bradley Henn, a fellow FTI colleague, on June 26,

2023 (the "Opening Report," ECF Doc. # 219-6).  The first of these, which explored recoveries

to creditors in a hypothetical Chapter 11 scenario, concluded, among other things, that holders of

SUNs (defined herein) would not receive any recoveries, translating into zero recoveries for

Norske Skogindustrier ASA ("Norske ASA") and its creditors.  (*See* Opening Report, Table 32.)

The second of these, as an "alternative economic damage consideration," determined a total of

NOK 2,803 million in economic damages if the deleveraging transaction proposed by the Ad

Hoc Group of Senior Secured Noteholders ("AHG" and the transaction, the "AHG Deleveraging

Proposal") on October 6, 2015 was pursued.  (*Id.* ¶ 185.)  In this second damages model, holders

of SUNs would also not receive any recovery as they "would be written off" under the AHG

Deleveraging Proposal.  (*Id.* ¶ 181(d), Table 35.)  Given, however, that Mr. Healy does not alter

his opinion with respect to the second damages scenario in the Supplemental Declaration, the

Motion centers solely on Supplemental Declaration's modifications to the first damages scenario,

which now projects a recovery for Norske ASA under a hypothetical Chapter 11 plan.  (*See*

Supporting Memo at 8 n.2.)

    Tom Hugo Ottesen, the duly appointed trustee and foreign representative of the Plaintiff,

submitted a brief in opposition to the Motion ("Opposition Brief," ECF Doc. # 211) as well as

the declaration of Robert J. Burns ("Burns Declaration," ECF Doc. # 212), a partner at Holland

& Knight, in support of Plaintiff's opposition.  The Defendants filed their reply brief ("Reply

Brief," ECF Doc. # 216) in further support of the Motion.

---

so-called "Bond Repurchase Scheme"; and (ii) the economic loss suffered by the Estate in connection with the 2016
SUNs Redemptions (as defined in the Third Amended Complaint), pursuant to the Norwegian Recovery Act § 5-12,
plus interest at the statutory rate; Count IV, originally against both the GSO Defendants and the Cyrus Defendants,
under Section 17-1 of the Public Limited Liability Companies Act seeks compensatory and consequential damages
in an amount to be determined at trial, plus interest at the statutory rate.  The Motion relates only to Count IV and
does not seek relief with respect to the damages that Plaintiff seeks on any other claims.

For the reasons discussed below, the Court **GRANTS** the Motion.

## I.    <u>BACKGROUND</u>

### A.  Relevant Case History

The initial complaint in this adversary proceeding was commenced almost five years ago, on December 18, 2018 (the "Complaint," ECF Doc. # 1), which has been amended several times. (*See* First Amended Complaint, ECF Doc. # 13; First Amended Complaint, ECF Doc. # 42; Second Amended Complaint, ECF Doc. # 108; Third Amended Complaint ("Third Amended Complaint"), ECF Doc. # 199.)  The Third Amended Complaint is the operative complaint for this proceeding.

On June 12, 2023, the Court entered the *Third Case Management and Scheduling Order* (ECF Doc. # 201), which established a deadline to complete expert discovery of September 8, 2023.  On June 26, 2023, the parties simultaneously exchanged opening expert reports. (Opposition Brief at 12.)  On August 2, 2023, rebuttal expert reports were also simultaneously exchanged.  (*Id.*)  On September 6, 2023, Mr. Healy was deposed.  (*Id.* at 13.)

### B.  The Section 17-1 Claim

Count IV of the Third Amended Complaint includes a claim under Section 17-1 of the Public Limited Liability Companies Act.  The claim centers on the disputed "Carra II transactions" (also referred to as the "Second Restructuring") that occurred in the spring of 2016. (Supporting Memo at 1.)  Before such transactions, the Norske group of companies maintained three classes of bond debt with the following order of priority:

1. €290 million 11.75% senior secured notes due 2019 ("SSNs") issued by Norske Skog AS ("NSAS") and secured by NSAS assets and guaranteed by Norske ASA, among others;

2. Two series of unsecured bonds due 2021 and 2023 ("PENs") issued by Norske Skog Holding AS ("NSH") and guaranteed by Norske ASA and Norske Treindustrier AS with subordinated guarantees from NSAS and other Norske entities; and

3. Three series of senior unsecured notes due 2016, 2017, and 2033 ("SUNs") issued by Norske ASA.

(*Id.* at 4–5; *In re Bankruptcy Estate of Norske Skogindustrier ASA*, 629 B.R. 717, 727–28

(Bankr. S.D.N.Y. 2021).).

Section 17-1 provides as follows:

> The company, a shareholder or others may hold the general manager, a member of the board of directors, member of the corporate assembly, independent expert, investigator or shareholder liable for any damage which they, in the capacity mentioned, have intentionally or negligently caused such party.

> The company, a shareholder or others may also hold a party who, intentionally or negligently, has contributed to damage as mentioned in first paragraph, liable for the damage. Damages can be claimed from the contributor even though the person who caused the damage cannot be held liable because he or she did not act with intent or negligence.

(Public Limited Liability Companies Act § 17-1.)  In broad strokes, Section 17-1 is a

codification of "Norway's non-statutory rule relating to negligent or intentional acts or omissions

that damage a public company" and, among other things, serves as a general damages provision.

*Norske*, 629 B.R. at 764.

The Motion asserts that, because Plaintiff is the estate of Norske ASA and not any of the

subsidiaries in the Norske group, the Section 17-1 Claim is "limited to the difference in funds

that Norske ASA would have been able to distribute to its body of creditors over what Norske

ASA actually distributed to its body of creditors."  (Supporting Memo at 5.)  Such body of

creditors are comprised of the (i) holders of SUNs and (ii) holders of SSNs and PENs in their

capacity as guarantee creditors.  (*Id.*)  For there to be damages to the Plaintiff, the Motion argues

that those creditors "must suffer a reduced recovery as against Norske ASA *i.e.,* on their

guarantee claims."  (*Id.*)

The Defendants argue that damages under Norwegian law are typically a function of reduced recoveries ("Dividend") such that:

- if Norske ASA creditors received a smaller Dividend from Norske ASA as a result of the Carra II transactions, then the damages would be the difference between that smaller Dividend and the Dividend that creditors would have received from Norske ASA absent the challenged transactions; and

- if Norske ASA creditors received the same or higher Dividend than what they would have received if the challenged transactions had not occurred, then there would be no loss.

(Supporting Memo at 5–6.)  The Defendants assert that Plaintiff's own legal expert confirmed that this analysis applies to Plaintiff's alternative Chapter 11 analysis described in greater detail below.  (*Id.* at 6.)

### C.  Fact Discovery

In July 2022, Defendants sought deposition testimony under Rule 30(b)(6) of the Federal Rules of Civil Procedure of the alleged "harms to [Norske ASA] caused by" the disputed transactions.  (*Id.* at 7.)  In response, Plaintiff produced Tom Hugo Ottesen, Plaintiff's trustee, to testify.  (*Id.*)  The Defendants indicate that Mr. Ottesen testified that the disputed Carra II transactions "had a positive effect on the equity of Norske ASA"; the "balance sheet of Norske ASA improved after the Carra II transactions"; and the "recovery prospects for the unsecured creditors of Norske ASA were better after the Carra II transactions than they were before the Carra II transactions."  (*Id.*)  Mr. Ottesen also indicated that Plaintiff hired an expert to address these matters.  (*Id.*)

### D.  Michael Healy's Opening Report and Supplemental Declaration

At issue is Table 32A in the Supplemental Declaration ("Table 32A"), which offers an alternative hypothetical to Table 32 ("Table 32") in the Opening Report.  (*See* Opposition Brief

at 18 (stating that Table 32A is an "alternate hypothetical").)  Both tables set forth conclusions concerning recoveries to creditors in the applicable Chapter 11 hypothetical.

     1.  <u>The Opening Report</u>

Michael Healy's original reports constructed two alternative models to calculate damages for Plaintiff's claim under Section 17-1 of the Norwegian Public Companies Act, only one of which is subject to the Motion.  (Supporting Memo at 1.)  The relevant model was premised on the assumption that, instead of implementing the Carra II transactions, Norske ASA and all its subsidiaries would reorganize under Chapter 11 in the United States (the "Chapter 11 Scenario"). (*Id.*)  On June 26, 2023, Mr. Healy submitted the Opening Report.  (*Id.* at 7.)  He opined that the Chapter 11 Scenario would have increased recoveries for "Norske Skogindustrier and its creditors" as compared to Norske's actual bankruptcy sale, which took place in late 2017 and 2018 after Norske ASA filed for bankruptcy in Norway.  (*Id.* at 1.)  However, the Opening Report also concluded that recoveries to creditors of Plaintiff would be 0% in a Chapter 11 Scenario.[4]  (*Id.* at 8.)

The Defendants indicate that Mr. Healy confirmed that his Chapter 11 Scenario analysis rested on certain assumptions:

- the value of the Norske group was insufficient to cover the debts issued by the Norske subsidiaries, NSAS and NSH;

- creditors in the Norske group would recover only on their claims against the respective issuers of their debt instruments, not against Norske ASA based on guarantees it had issued;

---

[4]    The parties do not address whether it is permissible to use hypothetical recoveries under a hypothetical U.S. Chapter 11 plan as a comparator in computing damages on a claim under Section 17-1 of the Norwegian Public Companies Act for a Norwegian company that filed a bankruptcy case in Norway under Norwegian law.  Since the Court concludes that Plaintiff's expert's original report concluded that no compensable damages resulted applying this theory it is unnecessary for the Court to decide the perhaps more fundamental question whether it is permissible to measure damages based on recoveries that may have been possible if a Chapter 11 case had been filed in the U.S.

- holders of SSNs would receive 100% recovery and were therefore deemed to accept the hypothetical Chapter 11 reorganization plan; and

- the Chapter 11 Scenario distributed allocable value consistent with the requirements of the absolute priority rule.

(*Id.* at 8–10.)  The Defendants further indicate that, in reliance on Mr. Healy's analysis, all the Norwegian law experts—including Plaintiff's own legal expert, Jo Rodin—testified that there would be zero recovery to Norske ASA or its body of creditors.  (*Id.* at 10.)  The Defendants emphasize that the Plaintiff can claim damages only if the hypothetical Chapter 11 Scenario would have increased recoveries for creditors of Norske ASA on their claims against Norske ASA.  (*Id.* at 1–2.)

On August 2, 2023, Mr. Healy and Mr. Henn served their expert rebuttal report, which did not alter the analysis in the Opening Report with respect to the Chapter 11 Scenario or the recoveries on claims against Norske ASA thereunder.  (*Id.* at 10.)

### 2.  The Supplemental Declaration

On September 29, 2023, Plaintiff served the Supplemental Declaration.  (*Id.*)  In the Supplemental Declaration, Mr. Healy indicates that his "primary opinion" that a Chapter 11 filing would "unlock significant value in the Norske parent company . . . [and] provide [Norske ASA]'s creditors with a far greater recovery than they received through the foreclosure sale to Oceanwood" remains unchanged.  (Supplemental Declaration ¶ 2.)  Rather, he seeks only to "clarify any testimony and opinion that gave the incorrect impression that a chapter 11 plan would be required to follow the absolute priority rule, with holders of structurally senior creditors receiving full payment prior to distribution to structurally junior creditors, and would have required zero recovery to the holders of the 2016, 2017 and 2033 SUNs."  (*Id.* ¶ 1.)  He notes that the Chapter 11 Scenario was "only meant to demonstrate one hypothetical scenario in which a chapter 11 plan could be confirmed" and did not account for "interim negotiations

among the parties, including distributions and reductions that would have resulted in unsecured creditor payouts." (*Id.* ¶ 2.) He asserts that the interpretation of Table 32 to "suggest an opinion that any chapter 11 plan would necessarily provide zero recovery to holders of the SUNs . . . [was] not [his] opinion." (*Id.*)

Mr. Healy offers Table 32A that presents an alternative hypothetical plan of reorganization which, he contends, was also likely to be approved (the "Supplemental Chapter 11 Scenario"), "based on the questioning and testimony and with the understanding that there will be negotiations in the hypothetical Chapter 11 case." (*Id.* ¶ 3.) Specifically, Table 32A illustrates a "hypothetical analysis where a plan of reorganization is negotiated prior to or during a U.S. Chapter 11 Bankruptcy filing and takes into account the [ad hoc group of 2019 SSN holders'] willingness to reduce its recovery in connection with a comprehensive restructuring."[5] (*Id.* ¶ 4.) Additionally, Mr. Healy indicates that the Supplemental Chapter 11 Scenario (i) "more accurately describ[es] unsecured creditors receiving pro rata distribution on their unsecured claims from value provided by [Norske ASA]" and (ii) "does not require additional funds or debt to achieve plan confirmation," leaving the same levels of available liquidity alongside a "favorable debt ratio" consistent with the market. (*Id.*) As reflected in Table 32A, holders of SSNs would recover 82% while holders of PENs and SUNs would recover 27%. (*Id.*, Table 32A; Supporting Memo at 11 (stating the same).) Underlying the Supplemental Chapter 11 Scenario is the assumption that the SSNs would constitute an impaired class that he believes would have voted in favor of the plan.

---

[5]    The AHG represents 62% of SSN holders. (Opposition Brief at 18.)

The Motion argues that the Supplemental Declaration contains "entirely new opinions

that fundamentally change . . . [Mr. Healy's] prior opinions and testimony." (Supporting Memo

at 11.) Specifically, the Motion asserts that the Supplemental Declaration:

- no longer assumes that the absolute priority rule will apply because "interim negotiations among the parties would result in *pro rata* distribution to the claims by unsecured creditors";

- opines without explanation that unsecured creditors will receive *pro rata* distribution on their unsecured claims from value provided by Norske ASA; and

- asserts that the SSNs, which were previously unimpaired in the Opening Report, would now be impaired and still vote in favor of the hypothetical Chapter 11 plan notwithstanding.

(*Id.* at 11–12.) In other words, the Supplemental Declaration includes new opinions with respect

to the Chapter 11 Scenario concerning "(i) the application of the absolute priority rule; (ii) how

creditor classes would vote on the hypothetical plan of reorganization; (iii) the amounts of

recovery that would be distributed to each creditor class; and (iv) from which Norske entity that

value would be distributed." (*Id.* at 13.)

### E. The Defendants' Motion

#### 1. The Supplemental Declaration Violates Rule 26

The Motion argues that the Supplemental Declaration is, in actuality, a new expert report

in violation of Rule 26, containing new opinions that were not disclosed prior to the close of

expert discovery. (*Id.* at 3.) Specifically, the Motion argues the Supplemental Declaration

contains opinions contrary to those he offered in the Opening Report in support of a "brand-new

conclusion that the Chapter 11 Scenario would deliver a recovery to claims against Norske ASA,

where previously Mr. Healy opined . . . there was none." (*Id.* at 13.) The Motion asserts that the

Plaintiff "cannot meet its burden to demonstrate that this violation was substantially justified or

is harmless." (*Id.* at 3.) The Motion emphasizes that "Mr. Healy does not purport to address

previously unknown information" and there is no "new information justifying a change to Mr. Healy's opinions." (*Id.* at 13, 14.)

Additionally, the Motion argues that permitting such testimony would "substantially prejudice Defendants" as the Supplemental Declaration "fundamentally changes the damages analysis Mr. Healy presented in his original opening and rebuttal reports, which was confirmed at deposition." (*Id.* at 1.) Allowing the Supplemental Declaration would "require a do-over of the entire expert discovery process," necessitating both additional depositions of Mr. Healy and new opinions from Defendants' experts to respond to Mr. Healy's new opinions. (*Id.* at 3.)

> 2. Exclusion of the Supplemental Declaration is Appropriate Under Rule 37(c)(1)

The Motion further asserts that exclusion of the Supplemental Declaration is appropriate under Rule 37(c)(1). (*Id.* at 15.) Specifically, the Motion argues, the factors in the governing Second Circuit test for determining whether testimony should be excluded under Rule 37 support the exclusion of the Supplemental Declaration:

- Plaintiff cannot offer any explanation, justification, or valid excuse for its failure to comply with the Court's discovery schedule or the expert disclosure obligations set forth in Rules 26 and 37 of the Federal Rules of Civil Procedure;

- exclusion is still appropriate notwithstanding the undisputed importance of Mr. Healy's testimony set forth in the Supplemental Declaration as courts have routinely done so;

- admitting the Supplemental Declaration would severely prejudice the Defendants as discovery has closed and would require re-opening discovery; and

- exclusion, not a continuance, is the appropriate remedy as expert testimony concluded on September 8, 2023 in a case that has been pending for 5 years and trial is scheduled to commence on November 1, 2023.

(*Id.* at 16–20.)

### F.  The Plaintiff's Response

The Plaintiff's Opposition Brief argues that the Motion should be denied.  (Opposition Brief at 5.)  Denial is appropriate, Plaintiff contends, because (i) the Cyrus Defendants understood that the Chapter 11 Scenario was hypothetical in nature, which does not foreclose the possibility of other potential hypothetical scenarios; (ii) Mr. Healy's analysis serves merely as a guide and illustrative analytical framework for the Court, who is the "ultimate expert on how a Norske Chapter 11 would have worked"; (iii) the Supplemental Declaration was intended to offer clarification after Defendants sought to "mischaracterize" Mr. Healy's testimony; (iv) the Supplemental Declaration offers "nothing new" and is consistent with Mr. Healy's prior analyses and disclosures; and (v) the Supplemental Declaration merely offers "another iteration of what might have happened in the hypothetical world his analysis postulates."  (*Id.* at 4–5, 16–17, 19.)

The Plaintiff highlights that the underlying assumptions to the Opening Report made clear that the Chapter 11 Scenario was conducted on a "consolidated or 'deemed consolidated' basis."  (*Id.* at 11.)  Additionally, because Mr. Healy considers claims against Norske ASA "by virtue of its status as guarantor of its subsidiaries' debts as . . . claims against [Norske ASA] itself, [Mr. Healy] accordingly considers a decrease or increase in subsidiary-level guaranteed debt [to be] a direct benefit or detriment to [Norske ASA] by virtue of its impact on [Norske ASA's] guaranty liability."  (*Id.* at 11–12.)  Similar statements were made in Mr. Healy's rebuttal report, which Plaintiff indicates makes clear that (i) a plan of reorganization in a Chapter 11 would "be the result of negotiations with creditors"; (ii) Mr. Healy envisions a "consolidated or deemed-consolidated Chapter 11 process"; and (iii) "increased or decreased potential claims against [Norske ASA] as guarantor are properly considered detriments or benefits to [Norske ASA] itself."  (*Id.* at 12.)

Additionally, Plaintiff argues that Mr. Healy addressed certain of the Defendants' alleged "fundamental changes" in his September 6th deposition, including that (i) terms of Chapter 11 plans are derived from parties' "discussions and negotiations," which could result in plans that deviate from ordinary rules of absolute priority; (ii) Defendants were aware that hypotheticals are based on certain assumptions and their "results could change if those assumptions were changed"; (iii) the Chapter 11 Scenario presumed "substantive consolidation or deemed consolidation"; and (iv) guaranty claims against Norske ASA are "properly viewed as damages" of the Plaintiff. (*Id.* at 13–14.)

Finally, Plaintiff argues that, even if the Supplemental Declaration violates Rule 26, preclusion is nonetheless not warranted given the lack of bad faith and believes that any prejudice may be adequately mitigated with a "limited re-deposition of Mr. Healy." (*Id.* at 21–22, 24.) Moreover, Plaintiff states that the undisputed importance of the substance of the Supplemental Declaration further support its inclusion. (*Id.* at 23.)

### G. The Defendants' Reply

The Reply Brief asserts that the Supplemental Declaration introduces new opinions, going beyond mere clarification and "propounds a new damages theory that deviates in fundamental ways from his initial analysis and therefore violates Rule 26." (Reply Brief at 2–5, 7.) Specifically, the Defendants argue that the Supplemental Declaration cannot be reconciled with Mr. Healy's Opening Report as the Chapter 11 hypothetical in the Supplemental Declaration "does not even make use of Chapter 11." (*Id.* at 5.) Rather, Mr. Healy assumes that "all classes of creditors would agree to a 'pro rata distribution' through a consensual redistribution without the need for any judicial process, let alone a Chapter 11 'cram down.'" (*Id.* at 6.) Additionally, the Reply Brief argues that the Supplemental Declaration introduces a

"bevy of new assumptions regarding 'interim negotiations among the parties'" which they believe are facially implausible and result in an "about-face for Mr. Healy." (*Id.*)

Additionally, the Reply Brief argues that Plaintiff has failed to demonstrate why the Supplemental Declaration should not be excluded under Rule 37. (*Id.* at 7.) Defendants assert that the Plaintiff has not offered any "justifiable explanation" for its failure to comply with governing disclosure rules. (*Id.* at 8.) Defendants continue to acknowledge that the importance of the Supplemental Disclosure to the Plaintiff's case but argues that its importance "only serves to underscore the inexcusable quality of [the] delayed submission." (*Id.* at 9 (quoting *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93-cv-4001, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 23, 2004).)

Moreover, Reply Brief asserts that the Supplemental Declaration alters several of Mr. Healy's opinions on key issues, including the application of the absolute priority rule, which classes of creditors would have to vote on a plan of reorganization, which creditors would have to be crammed down, and the outcome of hypothetical "negotiations" among creditors. (Reply Brief at 9.) As such, admission of the Supplemental Declaration would be highly prejudicial as the Defendants' experts would have to formulate new opinions in response to Mr. Healy's "entirely new set of opinions" less than a month before trial. (*Id.*)

Lastly, given that discovery has closed, the case has been pending for several years, and a trial date is scheduled for November 6, exclusion, not a continuance, is the appropriate remedy. (*Id.* at 10.)

## II.    LEGAL STANDARD

### A.  Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure—made applicable to adversary proceedings by Rule 7026 of the Federal Rule of Bankruptcy Procedure—requires expert witnesses to submit a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them . . . [and] the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B).  This means that an expert's report must "stat[e] the testimony the witness is expected to present during direct examination, together with the reasons therefor." FED. R. CIV. P. 26(a)(2)(B) advisory committee's note to 1993 amendment.  Parties are entitled to rely on the assumption "that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 Civ. 09546, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007).  On the whole, disclosure rules serve the function of "locking the expert witness" into the opinions stated in its report so that "the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and to prepare for cross-examination and rebuttal." *Id.* at *4 (citation omitted).

Generally, Rule 26 requires expert testimony to be disclosed "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).  Although Rule 26(e) imposes a duty to supplement expert opinion disclosures, Rule 26(e) was not designed to introduce new theories "to fill a significant and logical gap in the first report" as that "would eviscerate the purpose of the expert disclosure rules." *Point Products*, 2004 WL 345551, at *9; *see also Foley v. United States*, 294 F. Supp. 3d 83, 100 (W.D.N.Y. 2018) (providing that "as a general matter, courts should not permit untimely disclosure of new opinions to fill gaps in expert proof").

Indeed, supplemental expert reports may be stricken where they "expound a wholly new and complex approach designed to fill . . . gap[s] [in] the first report." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (quoting *United States v. Vulcan Society, Inc.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009)). "[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined on, or to continually supplement their opinions." *Sandata*, 2007 WL 4157163, at *6. If an expert's report "does not rely [on] any information that was previously unknown or unavailable to him," it is not an appropriate supplemental report under Rule 26. *Cedar Petrochemicals*, 769 F. Supp. 2d at 278 (quoting *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253, 2009 WL 4907201, at *5–6 (S.D.N.Y. Dec. 18, 2009).)

### B.    Rule 37(c)(1) of the Federal Rules of Civil Procedure

Rule 37(c)(1) of the Federal Rules of Civil Procedure—made applicable to adversary proceedings by Rule 7026 of the Federal Rule of Bankruptcy Procedure—provides that a party who fails to comply with its disclosure obligations under Rule 26 is not permitted "to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Rule 37(c)(1) is designed to be an "automatic sanction," which "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." FED. R. CIV. P. 37(c) advisory committee's notes to 1993 amendment. Generally, the "party against whom sanctions are sought bears the burden of establishing that its noncompliance was either substantially justified or harmless." *Columbia Casualty Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14 Civ. 48, 2016 WL 184407, at *3 (S.D.N.Y. Jan. 15, 2016) (collecting cases).

Preclusion of an expert report, however, can be a harsh sanction. *Sandata*, 2007 WL 4157163, at *7. Accordingly, in determining whether preclusion is appropriate, a judge "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). In determining whether to strike untimely expert evidence pursuant to Rule 37, the Second Circuit has articulated four factors for consideration: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citation omitted); *see Softel, Inc. v. Dragon Medical and Scientific Commc'ns., Inc.*, 118 F.3d 955, 962–63 (2d Cir. 1997) (concluding that the balance of factors weighed in favor of affirming the lower court's decision to preclude). Notably, a finding of bad faith is not required before sanctions can be imposed under Rule 37(c)(1). *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (declining to find a requirement of bad faith in Rule 37(c)(1) since the rule, by its terms, does not require such a showing).

## III.    DISCUSSION

### A.  The Supplemental Declaration Violates Rule 26

The Supplemental Declaration's offering of an alternative Chapter 11 hypothetical introduces new opinions in violation of Rule 26 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(a)(2)(B)(i) (requiring disclosures of expert testimony to be accompanied with a written report of a "complete statement of all opinions the witness will express and the basis and reasons for them") (emphasis added); FED. R. CIV. P. 26(a)(2)(B)(ii) (requiring such written reports to contain "the facts or data considered by the witness in forming them"). Accordingly,

17

Mr. Healy's written reports should reflect the "full knowledge and complete opinions on issues for which his opinion has been sought." *Sandata*, 2007 WL 4157163, at *4.

While a party is required to supplement or correct a disclosure or response if the prior disclosure or response is "incomplete or incorrect," that is not the case here. FED. R. CIV. P. 26(e). Plaintiff does not argue that the Supplemental Declaration was offered in response to address an error in or to complete the Chapter 11 Scenario, but rather to respond to the Defendants' alleged "mischaracterizations." (*See* Opposition Brief at 4 ("Mr. Healy issued a brief supplemental declaration dispelling Defendants' mischaracterizations and clarifying his opinion."); *id.* at 14 (noting that the decision to offer a Supplemental Declaration followed Defendants' "questioning at Mr. Healy's deposition, and from subsequent conversations with Defendants' counsel, that Defendants were seeking to mischaracterize the [Chapter 11 Scenario] as reflecting the only possible reorganization plan that could have succeeded"). Indeed, Mr. Healy indicates in his Opening Report that the Chapter 11 Scenario was one that contained "values and terms [he] consider[ed] to be reasonable." (Opening Report ¶ 110.)

The Supplemental Chapter 11 Scenario offered in the Supplemental Declaration is a new, alternative hypothetical model predicated on new assumptions and orchestrated to illustrate the possibility of distributions to unsecured creditors in a Chapter 11. (Opposition Brief at 18 (referring to the Supplemental Chapter 11 Scenario as an "alternate hypothetical"); *id.* at 4 (calling the Supplemental Chapter 11 Scenario another "illustrative example"); *id.* at 14 (stating the same).) Notably, the modifications to the assumptions are not insignificant, including Mr. Healy's abandonment of the application of the absolute priority rule. (*See e.g.,* Supplemental Declaration ¶ 1 ("I wish to clarify any testimony and opinion that gave the incorrect impression that a chapter 11 plan would be required to follow the absolute priority rule, with holders of

structurally senior creditors receiving full payment prior to distribution to structurally junior

creditors, and would have required zero recovery to the holders of the 2016, 2017, and 2033

SUNs.").)

The offering of the Supplemental Chapter 11 Scenario is also counter to Mr. Healy and

Mr. Henn's mandate as set forth in the Opening Report, which provides that they were retained

on behalf of the Plaintiff to, among other things, (i) "[d]evelop[] *a* hypothetical plan of

reorganization based on the Chapter 11 Bankruptcy process and estimate[] a reorganized equity

value based on a supportable capital structure at emergence" and (ii) "[e]stimate[] economic

damages by comparing the total estimated recoveries to prepetition claimants under *a*

hypothetical plan of reorganization." (Opening Report ¶ 8 (emphasis added).) Mr. Healy had

only been tasked with developing a singular hypothetical Chapter 11 scenario and was not asked

by the Plaintiff to consider a range of possibilities. Notably, the Supplemental Chapter 11

Scenario illustrated in Table 32A "takes into account the AHG's willingness to reduce its

recovery in connection with a comprehensive restructuring" to approximately 82%, the "very

same haircut" the AHG suggested in its balance sheet deleveraging proposal. (Supplemental

Declaration ¶ 4; Opposition Brief at 18.) In the Opening Report, Mr. Healy addressed the

AHG's proposed "haircut" separately as an "alternative economic damage consideration" and

did not incorporate it as part of the Chapter 11 Scenario despite having an opportunity to do so.

(*See* Opening Report ¶¶ 175–186.) Thus, contrary to the Plaintiff's assertions that it was "not

Mr. Healy's opinion, nor could it be" that "the hypothetical plan of reorganization at Table 32 of

Mr. Healy's opening report is the only plan that Mr. Healy thinks could have emerged from a

Norske Chapter 11," it must be. (Opposition Brief at 16.)

As the Plaintiff itself acknowledges, "Mr. Healy's hypothetical plan of reorganization is just . . . a hypothetical, the variables of which might change if certain assumptions therein change. Accordingly, it cannot come as a surprise that if certain assumptions change[] . . . the *resulting hypothetical plan of reorganization would change*." (*Id.* at 17 (emphasis added).) As such, the modified assumptions have resulted in a new Chapter 11 situation, introducing a form of "new theory" to account for the possibility of "interim negotiations" that was designed to fill a "gap in the first report" after the close of discovery. *Cedar Petrochemicals*, 769 F. Supp. 2d at 279 (citation omitted). Accordingly, the Supplemental Declaration offers new opinions concerning the expected "prepetition claims recovery" in violation of Rule 26 of the Federal Rules of Civil Procedure.

### B. Exclusion of the Supplemental Declaration Under Rule 37 is Appropriate

Exclusion of the Supplemental Declaration is appropriate under Rule 37(c)(1) of the Federal Rules of Civil Procedure as the balance of the *Patterson* factors weigh in favor of such. Note at the outset that the Plaintiff asserts that preclusion is inappropriate where there is a lack of bad faith. As already discussed, the Second Circuit has declined to read a requirement of bad faith into Rule 37(c)(1) since the rule, by its own terms, does not require such a showing. *See Design Strategy*, 469 F.3d at 296. Accordingly, Plaintiff's argument is without merit.

#### 1.  Plaintiff Offers No Justifiable Explanation

Plaintiff states that the Supplemental Declaration was offered to "dispel[] Defendants' mischaracterizations and [to] clarify[] his opinion." (Opposition Brief at 4.) Additionally, the Plaintiff and Mr. Healy "opted to head off any claim of trial surprise, and [sought] to make Mr. Healy's opinion . . . abundantly clear." (*Id.* at 23.) Such an explanation is insufficient. As already discussed, the Supplemental Chapter 11 Scenario incorporates the same "haircut" that

20

the AHG previously proposed, which Mr. Healy separately addressed in the Opening Report as part of an "alternative economic damage consideration" without incorporating it as part of the Chapter 11 Scenario.   (*See* Opening Report ¶¶ 175–186.)  Therefore, the Supplemental Declaration "does not rely [on] any information that was previously unknown or unavailable" to Mr. Healy at the time his Opening Report was prepared.  *Cedar Petrochemicals*, 769 F. Supp. 2d at 278 (citation omitted).  Accordingly, the first *Patterson* factor weighs in favor of preclusion.

### 2.   The Supplemental Declaration is Likely Important

The Defendants concede that the Supplemental Declaration is likely important to the Plaintiff's case as, "without [it], [Mr. Healy's] original analysis eviscerates [Plaintiff's] ability to recover on its claims" under Section 17-1.  (Supporting Memo at 17.)  Specifically, Plaintiff can claim damages only if the hypothetical Chapter 11 Scenario would have increased recoveries for creditors of Norske ASA on their claims against Norske ASA.  (*Id.* at 1–2.)  Accordingly, this *Patterson* factor weighs against preclusion.

### 3.   Defendants Would be Prejudiced

As already discussed, the Supplemental Declaration contains new opinions as to recoveries to creditors of Norske ASA under a modified hypothetical Chapter 11, likely requiring a re-opening of discovery to allow Defendants' experts to formulate new opinions in response. (*See* Supporting Memo at 19 (stating that Defendants' restructuring expert assessed the Chapter 11 Scenario and Defendants' Norwegian law experts analyzed the questions of economic loss and cognizable damages based on the Chapter 11 Scenario).)  Coupled with the issuance of the Supplemental Declaration after the close of discovery and approximately one month before trial, the Supplemental Declaration is highly prejudicial to Defendants.  Plaintiff's argument that Defendants need only a "limited re-deposition of Mr. Healy to probe the substance of his two-and-one-half-page Declaration" is unpersuasive.  (Opposition Brief at 24.)  Mr. Healy's analysis

contained substantial modifications to the assumptions underlying the Chapter 11 Scenario that resulted in a "hypothetical plan of reorganization [that] change[d]" and ultimately altered projected recoveries across all creditor groups, including holders of SUNs. (*Id.* at 17.) Accordingly, the third *Patterson* factor weighs in favor of preclusion.

### 4. Exclusion, Not a Continuance, is the Appropriate Remedy

Discovery in this case, which has already been pending for five years, closed on September 8, 2023 and trial is scheduled to commence on November 1, 2023. Additionally, as discussed, discovery would likely need to be re-opened to address the Supplemental Chapter 11 Scenario presented in the Supplemental Declaration. Under such circumstances, continuance would not be the appropriate remedy. Accordingly, the fourth *Patterson* factor weighs in favor of preclusion.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion.

**IT IS SO ORDERED.**

Dated:    October 18, 2023
          New York, New York

                                   *Martin Glenn*
                                MARTIN GLENN
                     Chief United States Bankruptcy Judge